Clarence COLEMAN, Petitioner-Appellant,

v.

E. L. MAXWELL, Warden, Ohio Penitentiary, Respondent-Appellee.

No. 18278.

United States Court of Appeals
Sixth Circuit.

Aug. 29, 1968.

Certiorari Denied Jan. 20, 1969.

See 89 S.Ct. 699.

James R. Willis, Cleveland, Ohio, for appellant.

Leo J. Conway, Columbus, Ohio, for appellee; William B. Saxbe, Atty. Gen.,

Leo J. Conway, Asst. Atty. Gen., Columbus, Ohio, on brief.

Before WEICK, Chief Judge, and EDWARDS and PECK, Circuit Judges.

PER CURIAM.

Petitioner is presently serving a sentence in the Ohio Penitentiary of from one to seven years for his 1965 conviction in the Common Pleas Court of Cuyahoga County, Ohio, under a charge of having knowingly received stolen property. After exhausting his state remedies, petitioner filed a petition for habeas corpus in the United States District Court for the Southern District of Ohio in February, 1966, which the court dismissed after holding an evidentiary hearing (273 F.Supp. 275 (1967)).

The material facts leading up to petitioner's conviction are as follows: On August 31, 1964, a new combination radio-television and phonograph was stolen from the van truck of an appliance shop in Cleveland while the truck was parked at the side of the store. Several days later the police apprehended one Chris Carter, a known narcotics addict, who subsequently confessed to the theft. Petitioner was identified by Carter as the person to whom the TV had been sold. With this information, the police obtained a search warrant authorizing a search of petitioner's residence.

The stolen TV was recovered from petitioner's house as a result of the search. When questioned about the set, petitioner replied that he had purchased the TV, and requested his common-law wife, Miss Nicholson, to look for the sales slip. Although Miss Nicholson was unable to locate a sales slip, she did find a repair receipt showing that the set had been repaired by the L. C. Radio-Television Service. According to police, she handed this slip to petitioner who in turn gave it to them. Petitioner was arrested at this time.

Prior to trial, petitioner successfully moved to suppress the articles seized during the search of his house on the ground that the premises were situated

beyond the geographical jurisdiction of the Cleveland Municipal Court which issued the search warrant.

■ In the habeas corpus proceedings in the District Court petitioner denied giving the repair receipt to the police, claiming that they had obtained it during the search without his knowledge. He thus argued that the slip should have been suppressed along with the television set, and that the testimony of the repairman who testified at trial was constitutionally inadmissible as a fruit of the poisonous tree (Wong Sun v. United States, 371 U.S. 471, 487–88, 83 S.Ct. 507, 9 L.Ed.2d 441 (1963)), since the repairman was allegedly located through use of the receipt. This issue was resolved by the District Court's finding, based upon the testimony of two detectives, that the police had "a sufficiently independent source from which the [repairman] and the original receipt could have been produced without violating the constitutional proscription on the direct or indirect use of illegally seized evidence." In this respect, the two detectives testified that Carter had informed them that a repairman with the inscription "L. C. Radio-Television Service" on his shirt and truck came to repair the TV at petitioner's home. We cannot say that the District Court's finding is clearly erroneous (Rule 52, F.R.Civ.P.), and petitioner's contention that the officers' testimony was fabricated is rejected for lack of evidentiary support.

Carter was the State's principal witness at petitioner's trial. At the conclusion of the cross-examination of Carter, but while he was still on the stand, counsel for the defense requested the trial court to direct the prosecutor to turn over to him copies of Carter's pretrial statement so that he "might analyze those statements to determine whether or not the testimony rendered by Mr. Carter is consistent with the statements and to see further whether or not there is anything in those statements that would be beneficial to the defendant." In accordance with the then permissible practice in Ohio (See State v. Miller, 176 N.E.2d 296 (Ohio App. 1961); compare State v. White, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968) (held that a defendant has a right to an *in camera* inspection by trial court to determine the existence of inconsistencies between testimony of prosecution's witnesses and prior statements) ), the trial court offered to grant the request if the defense would consent to having Carter's statement marked as an exhibit and shown to the jury. This was not agreeable to defense counsel, and the court sustained the prosecutor's objection to the production of the statement.

Petitioner argued in the District Court that he had the constitutional right to inspect the extrajudicial statements given by the witnesses who testified at trial. Reliance was initially placed on Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957) (codified in substance in 18 U.S. C. § 3500). The District Court properly concluded that the Supreme Court in *Jencks* held, not as a matter of constitutional right, but as a matter within its supervisory power over the administration of federal prosecutions, that in a federal criminal proceeding the prosecution must upon request turn over to the defense statements made by government witnesses concerning events as to which such witnesses had testified on direct examination.[1] See Palermo v. United States, 360 U.S. 343, 790 S.Ct. 1217, 3 L. Ed.2d 1287 (1959).

■ During the course of the post-conviction proceedings in the District Court, the State made voluntarily available to petitioner and the court the statement given police by Carter. At this

[1]. While accused defendants in some states are generally afforded the opportunity to inspect prior statements of witnesses who testify at trial for purposes of impeachment, the accused in many states are not entitled to such inspection. See generally Annot. 7 A.L.R.3d (1966).

time, two alleged discrepancies were discovered between Carter's written statement and his trial testimony. However, a careful study of the record convinces us that while there are some minor inconsistencies there is no material variation between his testimony at the trial and his earlier statement. These inconsistencies do not appear to us (as they obviously did not to the District Judge) to warrant the conclusion that appellant was deprived of any federal constitutional right.

Affirmed.