**Sheridan Ray CAGLE, Petitioner,**

v.

**Herman C. DAVIS, et al., Respondents.**

**No. CIV-2-80-100.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

June 12, 1980.

On Motion for Summary Judgment
Sept. 5, 1980.

On Writ of Habeas Corpus Nov. 13, 1980.

On Stay of Judgment Dec. 18, 1980.

W. Gordon Ball, Newport, Tenn., and A. Benjamin Strand, Jr., Dandridge, Tenn., for petitioner.

James A. DeLanis, Asst. Atty. Gen. of Tenn., Nashville, Tenn., for respondents.

## MEMORANDUM OPINION

NEESE, District Judge.

The petitioner Mr. Sheridan Ray Cagle, a person represented by retained counsel and in custody of the respondent warden pursuant to the judgment of November 27, 1972 of the Criminal Court of Hamblen County, Tennessee, applied to this Court for the federal writ of habeas corpus, claiming that he is in such custody in violation of his federal rights to due process of law,* Constitution, Fifth and Fourteenth Amendments, and to a reasonably representative jury of the state and district wherein the crime was committed, *Taylor v. Louisiana* (1975), 419 U.S. 522, 538, 95 S.Ct. 692, 701, 42 L.Ed.2d 690, 703[2]; Constitution Sixth Amendment. 28 U.S.C. § 2254(a). He claims the exhaustion by every procedure of the remedies available to him under the laws of Tennessee in its courts, 28 U.S.C. §§ 2254(b), (c), by having presented the questions he presents here to a Tennessee trial court with an appeal to the highest state court having jurisdiction without having been accorded his federal rights.

It does not appear plainly from the face of the applicant's petition and the brief annexed thereto that the petitioner is not entitled to any relief; accordingly, the respondent-warden hereby is ORDERED to file an answer including a return certifying the true cause of the applicant's detention

and showing within 43 days herefrom any cause why the federal writ of habeas corpus should not be granted. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts; 28 U.S.C. § 2243. The noticed slow movement of the mail currently provides good cause for the additional time allowed. *Idem.*; Rule 81(a)(2), Federal Rules of Civil Procedure.

## ON MOTION FOR SUMMARY JUDGMENT

The respondents filed an answer in which they certified herein the true cause of the applicant's detention and undertook to show that the federal writ of habeas corpus should not be granted. They moved also for a summary judgment as to all claims for relief of the applicant. Rule 56(b), Federal Rules of Civil Procedure. Such motion has merit as to 2 claims of the applicant.

■ The applicant claims he was denied federal due process of law when the state trial judge did not hear *sua sponte* and determine the voluntariness of his purported confession to a fellow-inmate before allowing testimony concerning the confession to be related to the jury. Federal due process, as delineated in the Constitution, Fifth and Fourteenth Amendments, did not require the state trial judge to conduct a hearing on the voluntariness of the applicant's confession in a situation in which the applicant had made no contemporaneous challenge to the use as evidence of that confession by the state of Tennessee. *Wainwright v. Sykes* (1977), 433 U.S. 72, 86, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594, 607–608[4].

■ The applicant claims also that he was deprived of his federal right under the Constitution, Sixth Amendment, to a reasonably representative jury of the state of Tennessee and Hamblen County because females who were otherwise eligible for jury-

---

* The applicant claims in a brief accompanying his application that he was denied his due process right to have a fair hearing and a reliable determination on the issue of the voluntariness of his confession, *Jackson v. Denno* (1964), 378 U.S. 368, 376–377, 84 S.Ct. 1774, 1780–1781, 12

L.Ed.2d 908, 915–916 (headnote 4), and his due process right against suppression by the prosecution of evidence favorable to him, *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (headnote 3).

service were excused from such service under a statute excusing them unless they agreed to serve. T.C.A. §§ 22–101 et seq., and because there were excluded systematically from such jury-panels also persons between the ages of 17 and 21 years, Constitution, Twenty-Sixth Amendment. Here again, the failure of the applicant to raise before trial his challenges to the respective make-ups of the grand jury which indicted him and the trial jury which convicted him constituted a waiver of his objections thereto, as the applicant claims no actual prejudice caused him by either of those make-ups. *Francis v. Henderson* (1976), 425 U.S. 536, 537–542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149, 151–155[1a][1b].

As to the applicant's claims for relief predicated upon deprivation of due process from such lack of a hearing and such unrepresentational juries, therefore, such motion hereby is GRANTED, Rule 56(c), Federal Rules of Civil Procedure, and summary judgment for the respondents will enter as to those claims only. However, an evidentiary hearing will be required as to the third claim for relief of the applicant.

In this claim, the applicant asserts that he was denied federal due process of law when the state of Tennessee suppressed evidence favorable to him which had materiality on the issue of his guilt or innocence after he had requested the prosecuting attorney to provide him evidence of that sort. Mr. Cagle presented this issue in the courts of Tennessee and was denied relief both at the hearing and appellate levels. 28 U.S.C. § 2254(b).

The reporting Tennessee courts came to their respective decisions on this issue for different, if not contrary, reasons. The hearing judge found *inter alia* that the information possessed by the prosecuting attorney and unknown to the defense before and at trial did not constitute evidence which was exculpatory of the applicant, so that the applicant was not deprived of due process. *Sheridan Cagle v. State of Tennessee*, No. 79–CR–141 in the Criminal Court for Hamblen County, Tennessee, judgment of August 17, 1979. On appeal,

however, the resolution of this issue turned on the judicial opinion that the " * * * exculpatory statement made by the petitioner to the agent to the effect that he [the applicant] did not kill the victim was a self-serving declaration and was not admissible in evidence. * * * The [exculpatory(!)] evidence was not probative or admissible in evidence and could not have affected the result of the trial. * * * " *Sheridan Cagle*, appellant, v. *State of Tennessee*, appellee, No. 114, Hamblen Criminal, in the Court of Criminal Appeals of Tennessee, opinion of February 15, 1979, permission to appeal denied April 29, 1980 in *State of Tennessee*, plaintiff-appellee, v. *Sheridan Cagle*, defendant-appellant, C.C.A. No. 114, Hamblen County, in the Supreme Court of Tennessee.

This Court is of the present opinion that the crucial issue between the parties is, not whether the nature of the information withheld from the applicant was exculpatory of him, and not whether the evidence which might have been supplied by such information was self-serving, inadmissible, and unchanging of the result of the applicant's trial; rather, the issue seems to be whether, factually, the district attorney general who prosecuted the applicant was in a situation pretrial, or became so during trial, in which he was required by elementary fairness upon consideration of all the surrounding facts and circumstances, to disclose to the defense information which had a materiality to the doing of justice in the applicant's trial and, concurrently, to the establishment of the guilt or innocence of the applicant.

If such information was of such substantial value to the defense that the prosecuting attorney should have disclosed it to the defense without a request specifically therefore, then its withholding from the defense infringed upon the applicant's right to a fair trial. *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, cited in *Wagster v. Overberg*, C.A. 6th (1977), 560 F.2d 735, 739. There appears to have been no development of the foregoing material facts in the state court hearing in

*Sheridan Cagle v. State of Tennessee, supra*, so the finding of the state hearing court on the fair-trial issue cannot be presumed in this situation to have been correct. *See* 28 U.S.C. § 2254(d)(3). Thus, there are genuine issues of material fact extant between the parties as to this claim, so that summary judgment for the respondents as a matter of law would be inappropriate and the motion therefor hereby is DENIED. Rule 56(c), *supra*.

Until the facts are fully developed through the testimony of the prosecuting attorney and otherwise, whether the correct principle of law has been applied in this instance by the appellate court of Tennessee cannot be ascertained. As had been observed earlier, the applicant's confession, made to a fellow-prisoner while they were in jail on another charge and before the discovery of the fact that a murder had been committed, was direct evidence, *Moon v. State*, 146 Tenn. 319, 242 S.W. 39; *Monts v. State*, 214 Tenn. 171, 379 S.W. 34, so that the verdict of guilt against the applicant " * * * rested on both direct and circumstantial evidence * * *." *Cagle v. State*, C.Cr.App.Tenn. (1973), 507 S.W.2d 121, 130, certiorari denied (1974). But, that confession was verbal and, in so far as this record now shows, made in the presence of the applicant's fellow-inmate alone. This constituted " * * * very unsatisfactory evidence, partly because of the facility with which [it could have been] fabricated. * * " *Beckwith v. Bean* (1879), 98 U.S. 266, 25 L.Ed. 124, 129.

■ The prosecuting attorney and others planted an undercover law-enforcement agent, who was experienced in interviewing suspects, in the cell with the applicant with the avowed purpose " * * * to see if I could get any information as to his being involved in the homicide * * * " with which he was then charged.[1] Any defendant who is said to have confessed a crime voluntarily is permitted to familiarize the jury with all the circumstances that attended the taking of his confession, " * * * including facts bearing upon its weight * * *," and, in such a case, the jury is " * * * at liberty to disregard confessions that are * * * deemed unworthy of belief. * * * " *Lego v. Twomey* (1972), 404 U.S. 477, 486, 92 S.Ct. 619, 625, 30 L.Ed.2d 618, 625.

If the jury found the inmate's testimony, as to the applicant's voluntary confession to him, unworthy of belief and disregarded it, the evidence against the applicant would then have been wholly circumstantial and every reasonable hypothesis other than the guilt of the applicant must have been excluded before a conviction would have been warranted. *Marable v. State* (1958), 203 Tenn. 440, 313 S.W.2d 451, 457[2], reaffirmed in *Crouch v. State* (1973), Tenn., 498 S.W.2d 97, 99[2]. In the light of that potential development in the course of the proceedings, it would seem that the applicant had a right to familiarize the jury with the circumstance that he had not confessed the crime with which he was charged to an investigator skilled in interviewing suspects after an inmate in a jail had testified that the crime had been confessed by the applicant before the charge was made. This would not have required the implanted agent to have repeated any statements the applicant had made in his own favor, in the effort to show his innocence; only that in this setting he had made no statement at all implying his guilt.

This Court labors with the declaration of the Tennessee appellate court, to the effect that the purport of the withheld statement was self-serving and lacking in probative effect under this set of circumstances. It is not the fact that a statement serves the interest of a person who is accused of a crime which results in its being excluded from evidence, even in Tennessee; as an

---

1. The applicant claims in a brief accompanying his application that he was denied his due process right to have a fair hearing and a reliable determination on the issue of the voluntariness of his confession, *Jackson v. Denno* (1964), 378 U.S. 368, 376–377, 84 S.Ct. 1774, 1780–1781, 12 L.Ed.2d 908, 915–916 (headnote 4), and his due process right against suppression by the prosecution of evidence favorable to him, *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218 (headnote 3).

example, Tennessee recognizes that statements contained in an accused person's confession of crime which serve his or her purposes are admissible in evidence when introduced by the prosecution, *Hall v. State*, C.Cr.App.Tenn. (1977), 552 S.W.2d 417, 418[3], certiorari denied (1977). The reason for exclusion of a self-serving statement is " * * * because there is nothing to guarantee its trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused [person] could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence. * * * " *Idem.*

Contrary to creating self-serving evidence for himself, by making statements to the planted agent to show his innocence, on this occasion the applicant made statements to his fellow-inmate which were inculpatory. Nevertheless, the fact that the applicant did not confess to a person planted with him in a jail-cell to prevail upon him to confess would have been impeaching of the testimony of the inmate and was a fact bearing upon the weight to be given the inmate's account of the applicant's confession in the same jail-cell. Impeaching evidence is a type which must be disclosed by a prosecuting attorney when disclosure is required. *Gigilo v. United States* (1972), 405 U.S. 150, 152–154, 92 S.Ct. 763, 765–766, 31 L.Ed.2d 104, 108[4].

It becomes evident from a consideration of these possibilities that this third issue cannot be disposed of according to law and justice without the full-blown testimony of the prosecuting attorney encompassing events from the moment the investigation of the disappearance of the applicant's victim began until the end of the applicant's trial. The salient inquiry will be what the prosecuting attorney knew at the respective stages of the investigation, what the potentialities of the applicant's being found guilty or innocent of the murder of his victim were at each such moment, and whether, at any point in the proceedings, there was a situation in which elemental fairness required the prosecuting attorney to disclose to the defense the information he possessed with materiality on the issue of the applicant's guilt or innocence[2] and, concomitantly, the doing of justice by the state of Tennessee. If there was a duty of disclosure and that duty was unfulfilled, the omission of the prosecuting attorney to disclose must then be evaluated " * * * in the context of the entire record * * *," *United States v. Agurs, supra*, 427 U.S. at 112, 96 S.Ct. at 2402, 49 L.Ed.2d at 355[13a], to determine whether law and justice require a retrial of the applicant.

An evidentiary hearing being required herein, it will be assigned by the clerk for Thursday, September 11, 1980, commencing at 10:00 o'clock in the forenoon before the undersigned judge. Rules 8(a), (c), Rules Governing Section 2254 Cases in the United States District Courts. The writ of habeas corpus *ad subjiciendum* will issue for the production of the applicant in person by the respondent-warden at the aforementioned hearing. *See* 28 U.S.C. § 2243. Retained counsel for the applicant will attend to assuring the presence as a witness at such hearing of Heiskell Winstead, Esq., district attorney general of the 20th judicial circuit of Tennessee.

## ON WRIT OF HABEAS CORPUS

■ The Court conducted an evidentiary hearing on September 11, 1980 to determine whether elementary fairness required, under all the pertinent facts and circumstances, the disclosure to Mr. Cagle's defense of

---

2. " * * * [T]here are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request. For though the attorney for the sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that 'justice shall be done.' He is the 'servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.' * * * This description of the prosecutor's duty illuminates the standard of materiality that governs his obligation to disclose exculpatory evidence. * * * " *United States v. Agurs, supra*, 427 U.S. at 110–111, 96 S.Ct. at 2401, 49 L.Ed.2d at 353–354[8, 9] (footnote reference and citation omitted here).

information of substantial value and material to the doing of justice in the applicant's trial and, concomitantly, to the establishment of his guilt or innocence on the charge for which he is now serving a sentence of 99 years. If it did, the applicant has been denied his federal constitutional right to a fair trial, in which event whether his conviction should be set aside and a retrial allowed must be considered. *See* memorandum opinion and order herein of September 5, 1980.[1]

This determination has been made on the bases that the public prosecutor Heiskell H. Winstead, Esq., district attorney general of the 20th judicial circuit of Tennessee, received no general request for exculpatory material from Mr. Cagle within the meaning of *Brady v. State of Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. It is made also cognizant of the fact that Mr. Cagle knew that he had had a series of conversations on August 2–3, 1972[2] with a person he was led to believe was, but who was not, a criminal, a "hippy"-type, and a sympathetic cell-mate.

Only a brief summarization is necessary. Mr. Winstead knew soon afterward that Mrs. Edith ("Deanie") Briggs, the 19-year-old wife of Mr. Cagle's brother-in-law, had been reported missing on July 20. The Cagles and the Briggs' had formerly shared living quarters, and Mr. Cagle soon came under the suspicion of investigating law-enforcement officers in Hamblen County in connection with Mrs. Briggs' disappearance.

Mr. Cagle joined Mr. Briggs, the husband of the missing woman, and other relatives in searching for her on the same day in the Cagle family car. They discovered the Briggs' family car, Mrs. Briggs' purse and some of its former contents near a lake in Hamblen County.

On the following day, *viz.,* July 21, Mr. Cagle was committed to the Hamblen County jail on a charge of having violated the state bad-check law. While he remained thus incarcerated, Mrs. Briggs' lifeless body was found on July 24 in a rock quarry in neighboring Jefferson County, Tennessee, some 19 miles removed from the spot the Briggs' car had been found earlier. Mr. Cagle was placed under arrest on a formal charge of having murdered Mrs. Briggs in the first degree on the same day, *i. e.,* July 24, and private counsel was retained to represent him.

Mr. Winstead and other authorities caused to be placed within the cell with Mr. Cagle on August 2 Mr. E. Stephen Cole (Agent Cole). Although posing as a criminal and a "hippy"-type, *supra,* Agent Cole was in reality an agent of the Tennessee Bureau of Criminal Identification (TBI) with 10 years' experience in interviewing persons suspected of criminality and others.[3] The reason he was "planted" in Mr. Cagle's cell was (in his words) " * * * to get as much information as possible from the subject, CAGLE, reference the murder of EDITH B. H. BRIGGS aka DEANIE. * * " *Cf. Brewer v. Williams* (1977), 430 U.S. 387, 399, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424, 437 (per Mr. Justice Stewart joined by Messrs. Justice Brennan, Marshall, Powell and Stevens).

Mr. Cagle and Agent Cole were secluded in the same jail-cell together for about 22

1. There are stricken therefrom on page 7, first full paragraph, line 7, the words, and under indictment; the indictment of Mr. Cagle having been returned on October 31, 1972.

2. Except as indicated otherwise, all subsequent dates mentioned herein were in the calendar year 1972.

3. The issue for decision by this Court allows a pretermission of any consideration of this violation of Mr. Cagle's federal rights against unreasonable search, Constitution, Fourth Amendment, *cf. Hoffa v. United States* (1966), 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 382[7]; to the assistance of counsel for the protection of his right against self-incrimination, Constitution, Fifth Amendment, *cf. Miranda v. United States* (1966), 384 U.S. 436, 471, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694, 722[29]; and to the effective assistance of counsel under the Constitution, Sixth Amendment, *cf. United States v. Henry* (1980), 447 U.S. 264, 280, 100 S.Ct. 2183, 2192, 65 L.Ed.2d 115, 129, cited (at the appellate level (C.A. 4th (1978), 590 F.2d 544)) in *State v. Berry* (1980), 592 S.W.2d 553 (which emanated also from the 20th judicial circuit of Tennessee).

hours. Mr. Cagle soon commenced a conversation and told Agent Cole that he was charged with the murder of Mrs. Briggs. He denied having killed her; he told Agent Cole of the course of intimacy between Mrs. Briggs and himself; he told him of conversations with Mrs. Briggs by telephone on July 20 and of his failing to keep the date with her they had arranged at that time; he told of his conversations with Mr. Briggs, who had said that Mrs. Briggs had advised him of her earlier conversation with Mr. Cagle; he told of helping Mr. Briggs and others search for Mrs. Briggs and of finding the Briggs automobile, her purse and some of its former contents; and he explained to Agent Cole why he would not have taken a dead body to the type of place where that of Mrs. Briggs had been located.

Mr. Cagle stated repeatedly to Agent Cole that he had not killed Mrs. Briggs, " * * * was very casual and seemed [not] the least bit concerned * * * " over the charge confronting him, except he appeared to Agent Cole to have real concern about the effect of fingerprints, inquiring of his cell-mate if fingerprints could be lifted from a piece of cloth. He described the deteriorated condition of Mrs. Briggs' body when it was found, stated that her head was "busted open" and that the FBI agents were sending 2 rocks found in the same vicinity to its laboratory for the removal therefrom of fingerprints, and stated his fingerprints would not be found and he hoped those of some other person would be found.

Mr. Cagle also related to Agent Cole that he regretted having told the officers, in his effort to assist them as he could, that he had called Mrs. Briggs; that the officers " * * * ain't got a dam[ned] thing on me * * * "; that he "got caught on my first time running-around on my wife"; that Mrs. Briggs was "hot" sexually and "really liked it"; that she was "screwing other" men he did not know personally; and that he "bet" her killer had been having sexual relations with her and had learned of her liaisons with him and other men.

In these conversations, according to Agent Cole, Mr. Cagle discussed his plans when he would be released but showed some concern that his life had been threatened by those who were "out to kill" him "just because he had been accused of killing" Mrs. Briggs. He reported that his father had arranged for his lawyer, who had been to visit him once, and who had asked Mr. Cagle if he had killed Mrs. Briggs; he said that he told his lawyer that he did not. He was "just holding-out until his preliminary hearing", in the view of Agent Cole, "so he could make bond and get out. He said he hoped his bond wasn't too much, because he was wanting to get out." Mr. Cagle advised Agent Cole that he would not plead guilty "to something he didn't do just to let somebody else get-away", and expressed confidence that "all he had to do was convince 12 people that he had not killed" Mrs. Briggs and then "he was free".

A written report of his experience with Mr. Cagle was made by Agent Cole. A copy thereof came pretrial to Mr. Winstead.

The fact that this fellow-jailhouse-conversationalist of Mr. Cagle was an agent of the state of Tennessee interviewing him in blatant violation of his federal constitutional rights, although of obvious interest to the defense in Mr. Cagle's subsequent trial, did not gain its later substantial value until October 17. On that date, another Mr. Cole,—Mr. Richard D. Cole (Inmate Cole)— who was, and had been for some 4 months, incarcerated in the Hamblen County jail on charges relating to bad checks and jumping board bills, sent word to law-enforcement officers that he had information of interest in the continuing investigation of the Briggs case.

Inmate Cole was thereupon interviewed by an agent of the TBI and related another series of conversations in which Mr. Cagle was said to have participated. (This Court has been able to fix the dates thereof as within the period July 21–24.)

As reported by Inmate Cole, there was a great deal of excitement in the community generated by the disappearance of Mrs. Briggs. This excitement and accompanying

curiosity came to the place of Mr. Cagle's incarceration by radio and an "occasional newspaper."

Within the institution, at the right side of the so-called "slams", Mr. Cagle was housed with between a half-dozen and a dozen other inmates. As was customary in lockups, his fellow-inmates queried Mr. Cagle quickly after his arrival about the reason for his jailing and the circumstances surrounding it. For some reason unexplained in the record, his fellow-inmates asked Mr. Cagle if he and Mrs. Briggs " * * * had been together. * * * " They inquired concerning the then-current whereabouts of Mrs. Briggs and other questions prompted by their curiosity. They were especially inquisitive as to whether Mr. Cagle had " * * * been going to bed with * * * " Mrs. Briggs. Mr. Cagle first denied, and afterward admitted, that he had been thus involved with Mrs. Briggs.

This line of discussion and questioning continued over a period of 2 or 3 days, including questions as to whether Mr. Cagle " * * * had killed * * * " Mrs. Briggs, and was accelerated anytime a newspaper arrived in the lockup. Mr. Cagle would react angrily over some of the accounts in the public media of the activities of law-enforcement officers relating to their investigation of Mrs. Briggs' disappearance. At times " * * * [h]e'd ask questions, like—could they find fingerprints and all on whatever was wrapped around her neck.

He was asking since the body had been out so long if they could find fingerprints and all on that. * * * " Mr. Cagle continued to deny to his fellow-inmates he had killed Mrs. Briggs until an occasion when he " * * * went into a fit of rage * * * when he saw the paper * * * " and, according to Inmate Cole, said: "Well, hell yeah; I killed the dam[ned] bitch." [4]

Precisely 2 weeks after the availability of Inmate Cole as a witness became known, a grand jury returned a presentment (or indictment) against Mr. Cagle, charging him with the murder in the first degree of Mrs. Briggs. Mr. Winstead was required by T. C. A. § 40–2407 to endorse at that time on that indictment the names of witnesses he wished summoned to testify at the impending trial of Mr. Cagle. " * * * The reason for the rule requiring the names of witnesses to appear on the indictment is to make known to the defendant the names of such witnesses who will be called to testify so that the defendant will not be surprised and handicapped in the presentation of his case. * * * " *McBee v. State* (1963), 213 Tenn. 15, 27–28 [10], 372 S.W.2d 173. He endorsed neither the name of Inmate Cole or Agent Cole.[5]

Mr. Winstead testified that he felt from the outset he " * * * had an excellent circumstantial case * * * " against Mr. Cagle, and, after being informed of Inmate Cole's volunteered information, " * * * knew then that I had a person who would testify that

---

**4.** Inmate Cole made it clear that the bulk of the talking in the jail-cell when he was in there with Mr. Cagle was carried on by and with several inmates, some 6 or 8 of them. There was never any suggestion, however, that any inmate other than Inmate Cole heard Mr. Cagle say he had killed Mrs. Briggs. Mr. Winstead was unable to say in his testimony whether any investigation was made to ascertain if another inmate or other inmates had overheard Mr. Cagle's purported confession but was able to say that no report came to him that any other inmate had heard the confession; he said: " * * * I would assume, knowing [investigating deputy sheriff] Charles Long as I do,—I am sure he attempted to find other inmates. * * * "

**5.** Mr. Winstead testified at the hearing that he relegated the role of Agent Cole to that of a rebuttal witness in his pretrial planning *inter alia* because Agent Cole's name did not appear on the face of the indictment against Mr. Cagle. He reassured the jurors: " * * * I am not trying to conceal anything favorable [to Mr. Cagle] from you * * * ," citing as an example that " * * * when you go out there and you look at the face of that indictment you will see we did not conceal Mr. Howard Sutton's name from the defendant; his name is the last name on the face of the indictment * * *." As observed, Inmate Cole's name was concealed from Mr. Cagle, as was the name of Agent Cole. Nonetheless, this Court's concern herein is with the character of the evidence suppressed as opposed to any moral culpability or wilfulness on the part of the prosecutor. *United States v. Agurs, infra*, 427 U.S. at 110, 96 S.Ct. at 2400, 49 L.Ed.2d at 353 [7].

Sheridan Cagle had said, 'yes, he had killed her.' * * * " He testified he had no witness who would testify that Mr. Cagle would deny confessing to Inmate Cole, " * * * but I knew if he admitted Richard Cole was telling the truth, then we had a judicial confession [6] in the courtroom. * * " Thus, Inmate Cole was a key witness against Mr. Cagle.

Mr. Winstead acknowledged in his testimony that he was " * * * aware of the fact that any exculpatory material had to be delivered to the defense counsel * * * " and " * * * was familiar with *Gigilo* * * * [in which the Supreme Court had held that impeaching evidence is a type which must be disclosed by a prosecuting attorney when disclosure is required]. * * * " He perceived it to be his responsibility during the investigatory stage to be as interested in establishing the innocence of persons accused of crime as in establishing their guilt and, at trial, " * * * to present the evidence as fairly and as accurately as I can. * * * " He did not disclose to Mr. Cagle's defense the fact that the defendant had been interviewed surreptitiously after his arrest and after he was represented by counsel and did not then confess the crime with which he was charged to the investigator, because " * * * I do not consider the fact, just his denial, saying 'I didn't do it', to be exculpatory or helpful in any way, or to assist at any stage of the trial; * * * I know of no reported cases that holds [sic] a statement, 'I didn't do it', as exculpatory. * * * "

Of course, Mr. Winstead is mistaken in his legal conclusion. As pointed-out by this Court earlier, in this very matter, the Court of Criminal Appeals of Tennessee, with a request for an appeal denied by the Supreme Court of Tennessee, described the material withheld by Mr. Winstead as "exculpatory". Even if that description be considered mere dictum, as far back as 1954 a case reported from the Supreme Court of the United States held that a denial of guilt in an extrajudicial statement subsequent to

an alleged crime is exculpatory. *Opper v. United States* (1964), 348 U.S. 84, 91, 75 S.Ct. 158, 163, 99 L.Ed. 101, 108.

Opper was charged with a conspiracy and several substantive offenses. He was convicted, and his conviction rested in part on a written statement he had made to agents of the Federal Bureau of Investigation and various statements he had made orally to its agents in multiple interviews. Included in these various statements Opper made were admissions, constituting essential elements of the crimes charged against his codefendant and himself; however, Opper " * * * consistently and specifically denied any guilt of the offense[s] charged. * * * " *Ibid.*, 348 U.S. at 88, 75 S.Ct. at 162, 99 L.Ed. at 106.

It became necessary for the Supreme Court of the United States, in passing upon Opper's conviction, to decide whether admissions of essential facts or elements of a crime, subsequent to the crime, require corroboration in the same way that an accused's post-crime confession requires it. In the course of this consideration, the late Mr. Justice Reed distinguished between confessions and exculpatory statements and defined exculpatory statements as " * * * those that explain actions rather than admit guilt. * * * " *Ibid.*, 348 U.S. at 92, 75 S.Ct. at 164, 99 L.Ed. at 108 (headnote 3). He also quoted Professor Wigmore in a footnote as having described exculpatory statements as those " * * * denying guilt * *." *Ibid.*, fn. 7. Even when an accused person, subsequent to the alleged crime, makes statements inculpating himself in the crime and admitting certain essential facts or elements of the crime, such statements, therefore, are "exculpatory" when the accused person punctuates those statements with the assertion, "I didn't do it."

But, as the respondents urge, the Tennessee courts have ruled that Mr. Cagle's exculpatory claims, that "I didn't do it" constituted in this matter self-serving declarations and would have been ruled inadmissi-

---

**6.** A judicial confession is usually defined as a confession made before a committing magistrate or in a court in the due course of legal proceedings. See 20 Am.Jur. 418, Evidence § 479.

ble if offered in evidence on Mr. Cagle's trial. This Court must accept that as the law of this case; however, as pointed-out earlier, *see* memorandum opinion and order herein of September 5, 1980, *supra*, this would not have prevented Agent Cole's testifying that he had had 22 hours of conversations in the jailhouse with Mr. Cagle in the same cell as had Inmate Cole and that, contrary to what Inmate Cole had testified, at no time had Mr. Cagle said to him, this or this in substance: "Well, hell yeah; I killed the dam[ned] bitch."

■ Where there are no extraneous circumstances affecting the weight of their testimony, the testimony of a witness who testifies to an affirmative is entitled to more weight and value than the testimony of a witness who testifies as to a negative. *Stitt v. Huidekoper* (1873), 84 U.S. (17 Wall.) 384, 21 L.Ed. 644, 647. But, this is only when the witnesses are of equal credibility.

Inmate Cole's testimony, that Mr. Cagle had confessed to him verbally, with only the 2 of them present, was unsatisfactory evidence from the outset. Had Mr. Cagle known and been able to show that he was re-interviewed a few days afterward by Agent Cole and had not also confessed to him, the jury, on being apprised of these true facts, might well have concluded that Inmate Cole had fabricated his testimony, in so far as Mr. Cagle's confession was concerned, to curry the favor of Mr. Winstead who was prosecuting Mr. Cagle and would have the duty to be prosecuting Inmate Cole later. *Cf. Napue v. Illinois* (1959), 360 U.S. 264, 270, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221–1222. Under these circumstances, the usual rule of comparative value as between positive and negative evidence would not have been applied, leaving for the jury as the only question, whether Inmate Cole or Mr. Cagle was to be believed. *Cf. Allis Chalmers Manufacturing Company v. Wichman*, C.A. 8th (1955), 220 F.2d 426, 431 [4], certiorari denied (1955), 350 U.S. 835, 76 S.Ct. 71, 100 L.Ed. 745.

■ Even if the law of evidence as applied in Tennessee rejects as self-serving Mr. Cagle's repeated denials of his guilt, Tennessee recognizes " * * * as a general rule, and based on good reason, that an accused may offer proof to contradict a confession and [that] these things are things for the jury to weigh. * * * " *Espitia v. State* (1956), 199 Tenn. 696, 700 (3), 288 S.W.2d 731. That Mr. Cagle did *not* say to Agent Cole, "well, hell yeah; I killed the dam[ned] bitch," is the occurrence subsequent to the occurrence under similar circumstances in which Inmate Cole claims Mr. Cagle made such a statement, would have been admissible as tending to show the truth or falsity of Inmate Cole's prejudicial testimony; because it is an established judicial rule of evidence that testimony of prior or subsequent occurrences, apart from a particular occurrence under scrutiny, even if not otherwise admissible, is admissible when it tends to show the truth or falsity of the particular occurrence under scrutiny. *Federal Trade Commission v. Cement Institute* (1948), 333 U.S. 683, 705, 68 S.Ct. 793, 805 [8], 92 L.Ed. 1010, cited and quoted from in *United Mine Workers v. Pennington* (1965), 381 U.S. 657, 670, n.3, 85 S.Ct. 1585, 1593, n.3, 14 L.Ed.2d 626, 636, n.3 [24], on remand *Lewis v. Pennington*, D.C. Tenn. (1965), 257 F.Supp. 815, affirmed in part, reversed in part, C.A. 6th (1968), 400 F.2d 806, certiorari denied (1968), 393 U.S. 983, 89 S.Ct. 450, 21 L.Ed.2d 444, rehearing denied (1969), 393 U.S. 1045, 89 S.Ct. 616, 21 L.Ed.2d 599, appeal after remand *Dean Coal v. United Mine Workers of America*, 421 F.2d 1380, certiorari denied (1970), 398 U.S. 960, 90 S.Ct. 2177, 26 L.Ed.2d 546, citing also *American Medical Ass'n v. United States*, C.A.D.C. (1942), 130 F.2d 233, 251–252, certiorari granted (limited to other issues).

■ Any doubt as to whether the withheld information was material to the issues to be decided in Mr. Cagle's case appears to dissolve with the description the Tennessee courts put on the duty in that connection of the public prosecutors of the state. As was stated by the Court of Criminal Appeals of Tennessee, a public prosecutor of Tennessee

" * * * has no right to suppress testimony. * * * " *Aldridge v. State*, C.Cr.App.Tenn. (1971), 4 Tenn.Cr.App. 254, 470 S.W.2d 42, 46 [4].

Cited therein *inter alia* was *Jackson v. Wainwright*, C.A. 5th (1968), 390 F.2d 288. Circuit Judge Wisdom had stated therein:

> * * * A weakness in the adversary system of administering justice is the possibility of unfairness arising (sometimes) from the prosecution's superior resources and special access to information and witnesses. To protect the innocent who might suffer from this unequal contest, Canon 5 of the American Bar Association Canons of Professional Ethics commands: "The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done. The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible." So also commands the due process clause of the Constitution.

> * * * * * *

*Ibid.*, 390 F.2d at 294–295 [2]. And as to the fact that Mr. Cagle knew of his conversations with a person (he *now* knows years afterward to have been Agent Cole), as Judge Wisdom observed: " * * * A defense lawyer cannot be expected to assume that a witness [available to the state but] not called to testify * * * has evidence favorable to the defense. * * * " *Ibid.*, 390 F.2d at 298 [4]. It was not for Mr. Winstead to make the ultimate determination of what would be helpful to the defense. *United States ex rel. Thompson v. Dye*, C.A.3d (1955), 221 F.2d 763, 767, certiorari denied *sub nom. Commonwealth of Pennsylvania v. United States ex rel. Thompson* (1955), 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773; *see also United States v. Rutkin*, C.A.3d (1954), 212 F.2d 641, 645 [9], and *Curran v. State of Delaware*, C.A.3d (1958), 259 F.2d 707, 711 [1], certiorari denied (1959), 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353; and *see also Jackson v. Wainwright, supra*, 390 F.2d at 296. Hindsight leaves little doubt that Mr. Cagle's lawyer could have put the admissible testimony of Agent Cole " * * * to not insignificant use. * * " *United States v. Keough*, C.A.3d (1968), 391 F.2d 138, 147–148 [6], on remand D.C.N.Y. (1968), 289 F.Supp. 265, affirmed (1969), 417 F.2d 885.

The testimony of Agent Cole would not have had a direct bearing on the establishment or negation of the essential elements of the crime charged against Mr. Cagle. Notwithstanding, the testimony of Agent Cole would have been material to Mr. Cagle's guilt or innocence; Agent Cole's statements could well have been determinative of whether the entire fact-finding process was operating effectively in Mr. Cagle's case since Inmate Cole's credibility was a key factor in the jury's disposition of the question of whether Inmate Cole, who was establishing essential facts directly material to Mr. Cagle's guilt or innocence, was reliable and testifying truthfully. *Coleman v. Maxwell*, D.C.Ohio (1967), 273 F.Supp. 275, 280, affirmed C.A. 6th (1968), 399 F.2d 662, certiorari denied (1969), 393 U.S. 1058, 89 S.Ct. 699, 21 L.Ed.2d 700 (quoting from the Supreme Court in *Napue, supra*, to the effect that " * * * 'a jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.' * * * ")

This Court hereby FINDS that, after Inmate Cole's testimony, that Mr. Cagle had confessed to him, became available to the prosecution, the fact that the person with whom Mr. Cagle had had a subsequent conversation in the same jail-cell was actually an agent reinterviewing him became evidence obviously of such substantial value to Mr. Cagle's defense that elementary fairness required it to be disclosed to him even without a specific request therefor. *Cf. United States v. Agurs* (1976), 427 U.S. 97, 110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 353–354 [8]. There remains for consideration the question, whether the evidence thus omitted creates a reasonable doubt that did not otherwise exist in an evaluation of the omission in the context of the entire record. *Ibid.*, 427 U.S. at 112, 96 S.Ct. at 2401, 49 L.Ed.2d at 354–355.

The crux of this determination has been stated, as follows: " * * * If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. * * * " *Ibid.*, 427 U.S. at 112–113, 96 S.Ct. at 2402, 49 L.Ed.2d at 355 [15]. Without the testimony of Agent Cole, this Court is unable to say the verdict against Mr. Cagle is " * * * of questionable validity * * * "; on the other hand, this Court finds and concludes that there is reasonable doubt that Mr. Cagle's guilt has been proven if the admissible evidence Agent Cole could have provided is considered.

Without such evidence, the jury could have found (and evidently did find) directly and by reasonable inference:

* * * that the defendant secretly entered and concealed himself in the basement of the Briggs' home on each of the two days prior to the deceased's death; that on one of those two occasions, intending to kill her with a table leg, he attempted to get her to come to the basement by removing electrical fuses to interrupt the current in the house; that, failing in his first effort, in the forenoon of the day of her death, still bent on killing her, he lured her to the lake by telephoning her and falsely representing that his car was disabled and he and his wife were stranded, and there strangled her with pieces of cloth which he had taken from her basement and then transported her body to the quarry in Jefferson County; or that, after deceitfully enticing her to the lake with murderous intent, he then forcibly took her or lured her from the lake to the quarry and there deliberately killed her and hid her body. * * *

*Cagle v. State,* C.Cr.App. (1973), 507 S.W.2d 121, 129 [5], certiorari denied (1974). With the additional evidence admissible under Tennessee law which Agent Cole could have provided the jury, it could have found directly or by reasonable inference

* * * that the defendant secretly entered and concealed himself in the basement of the Briggs' home on each of the two days prior to the deceased's death; that on one of those two occasions, he attempted to get her to come to the basement where he had a table leg as a possible weapon by removing electrical fuses to interrupt the current in the house; that, failing in his first effort, in the forenoon of the day of her death, he lured her to the lake by telephoning her and falsely representing that his car was disabled and he and his wife were stranded, and that there someone strangled her with pieces of cloth which the defendant had taken from her basement and someone then transported her body to the quarry in Jefferson County; or that, after the defendant had deceitfully enticed her to the lake, someone then forcibly took her and lured her from the lake to the quarry where someone deliberately killed her after which the defendant or someone else hid her body.

If the jury viewed that part of Inmate Cole's testimony, to the effect that Mr. Cagle confessed verbally to him, as unsatisfactory or concluded that it had been fabricated by him, it would then have been necessary for Mr. Winstead to have presented evidence of Mr. Cagle's guilt to be measured by these stringent rules:

* * * * * *

"(1) It should be acted upon with caution; (2) all the essential facts must be consistent with the hypothesis of guilt, as that is to be compared with all the facts proved; (3) the facts must exclude every other reasonable theory or hypothesis except that of guilt; (*Lancaster v. State,* 91 Tenn. 267, 18 S.W. 777) and (4) the facts must establish such a certainly of guilt of the accused as to convince the mind beyond a reasonable doubt that the accused is the one who committed the offense." Wharton's Criminal Evidence, Vol. 2, pages 1605–1606.

"It is not necessary that each particular fact should be proved beyond a reasonable doubt if enough facts are proved to satisfy the jury, beyond a reasonable

doubt, of all the facts necessary to constitute the crime charged * * *. Before a verdict of guilty is justified, the circumstances, taken together, must be of a conclusive nature and tendency, leading on the whole, to a satisfactory conclusion and producing in effect a moral certainty that the accused, and no one else, committed the offense." Wharton, supra, pages 1609–1610.

\* \* \* \* \* \*

*Marable v. State* (1958), 203 Tenn. 440, 313 S.W.2d 451, 456–457.

In the light of this comparison, it becomes very apparent that an entirely different lawsuit was for trial with the suppressed evidence undisclosed and with it disclosed.

This Court must not be deterred in protecting the federal constitutional rights involved even though a vile crime has been committed. *Cronnon v. State of Ala.*, C.A. 5th (1979), 587 F.2d 246 (opinion concurring in the result) at 252. If the circumstantial case against Mr. Cagle is as strong as the prosecuting attorney estimates, there should be no difficulty in reconvicting him in a retrial in which he shall have had federal due process.

Of course, Mr. Cagle might have been convicted even if he had known of Agent Cole's availability as an impeaching witness and Agent Cole had testified as it is anticipated he would have: the jury might not have been impressed by the suppressed evidence, " * * * but it cannot be assumed that the jury would have * * * " convicted Mr. Cagle with his denial of having confessed to Inmate Cole corroborated by the testimony of a governmental agent. *Cf. United States v. Baldi*, C.A.3d (1952), 195 F.2d 815, 820, certiorari denied (1953), 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341. Accordingly, the applicant is entitled to relief on his third claim.

The writ of habeas corpus will issue, directing that the respondent-warden or his successor(s) to release the petitioner Mr. Sheridan Ray Cagle from custody forthwith

unless the state of Tennessee has begun a retrial of Mr. Cagle under the indictment of October 31, 1972 in *State of Tennessee v. Sheridan Ray Cagle*, no. 4824 in the Criminal Court of Hamblen County, Tennessee, within a reasonable time. 28 U.S.C. § 2241(c)(3).

## ON STAY OF JUDGMENT

This Court, disposing of this matter as law and justice required, 28 U.S.C. § 2243, ordered the respondent-warden to discharge the petitioner unless he is retried by the state of Tennessee within a reasonable time. *See* writ of habeas corpus herein of November 13, 1980. On December 3, 1980 the respondent-warden filed a notice with the clerk of this Court of an appeal from such order and applied timely for its stay pending appeal. Prior thereto, on November 26, 1980,[1] the petitioner had applied for his release pending appeal and interposed a "response" to the respondents' application for a stay of judgment.

 In such motions and in accompanying briefs both parties cited and relied on various provisions of the Federal Rules of Civil Procedure. Habeas corpus " * * * is a civil proceeding * * *," but there are " * * * differences between general civil litigation and habeas corpus proceedings * * * [and] * * * the Federal Rules of Civil Procedure apply in habeas proceedings only 'to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions.' * * *" *Browder v. Director, Ill. Dept. of Corrections* (1978), 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521, 534 [15a, 16, 17]. In so far as concerned in this particular matter: " * * * Appeal in habeas corpus cases is governed by the Federal Rules of Appellate Procedure * * *." 17 Wright, Miller, Cooper & Gressman Federal Practice and Procedure 694: Jurisdiction § 4268.

An appeal herein is permitted by law as of right. 28 U.S.C. § 2253. " * * * In a civil case * * * in which an appeal is per-

---

1. When the immediately foregoing documents were lodged with our clerk.

mitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 [of the Federal Rules of Appellate Procedure] shall be filed with the clerk of the district court within 30 days of the date of the entry of judgment or order appealed from * * *." Rule 4(a), Federal Rules of Appellate Procedure; *Browder v. Director, Ill. Dept. of Corrections, supra,* 434 U.S. at 263, 98 S.Ct. at 560, 54 L.Ed.2d at 531 [5] ("Under Fed Rule App Proc 4(a) * * * a notice of appeal in a civil case must be filed within 30 days of entry of the judgment or order from which the appeal is taken. * * * ") " * * * If an appeal is taken by a state or its representative, a certificate of probable cause is not required." Rule 22(b), Federal Rules of Appellate Procedure.

■ This Court is authorized to stay its order herein. Rule 8(a), Federal Rules of Appellate Procedure. The respondents must show (1) a likelihood that they will prevail on the merits of their appeal; (2) irreparable injury to themselves unless the stay is granted; (3) no substantial harm to other persons; and (4) no harm to the public interest. *Pitcher v. Laird,* C.A. 5th (1969), 415 F.2d 743, 744–745 [1]; *accord:* (as to taking into account " * * * factors such as irreparable harm and probability of success. * * * ") *Coleman v. Paccar, Inc.* (1976), 424 U.S. 1301, 1305, 96 S.Ct. 845, 848, 47 L.Ed.2d 67, 71 [5]. This Court cannot say that such showings have not been made herein.

■ " * * * Pending a review of a decision ordering the release of a prisoner in such a [habeas corpus] proceeding, the prisoner shall be enlarged upon his recognizance, with or without surety, unless the * * * judge rendering the decision * * * shall otherwise order." Rule 23(c), Federal Rules of Appellate Procedure. " * * * If the custodian deems release pending appeal to be inappropriate, or if he deems it appropriate to request that bail with surety be fixed, the custodian should * * * apply to the district judge who rendered the decision. * * * " *United States ex rel. Barnwell v. Rundle,* C.A.3d (1972), 461 F.2d 768, 770 [3].

■ The respondents-appellants thus applied for refusal of bail, claiming it would be inappropriate because, if this Court's order is affirmed, Mr. Cagle will be retried for murder in the first degree; this, it is claimed, is sufficient reason to deny Mr. Cagle bail pending appeal, citing *Lewis v. Henderson,* C.A. 6th (1966), 356 F.2d 105, 106 [2]. The Court does not agree.

The intendment of Rule 23(c), *supra,* since being amended in 1967, is to insure that a district court retains power to issue an order respecting enlargement of a prisoner on bail at least until such initial order is modified " * * * for specific reasons shown * * *." *Jago v. U.S. Dist. of Ohio, E. Div. at Cleveland,* C.A.6th (1978), 570 F.2d 618, 626 [6]. That rule is clear that, pending appeal by the custodian of a prisoner who has successfully obtained a writ of habeas corpus, " * * * the prisoner is presumptively entitled to release. * * * " *United States ex rel. Barnwell v. Rundle, supra,* 461 F.2d at 770 [3].

The late Chief Judge (afterward Justice) Benjamin Cardozo had stated earlier the rationale of such a presumption:

\* \* \* \* \* \*

It would be intolerable that a custodian adjudged to be at fault, placed by the judgment of the court in the position of a wrongdoer, should automatically, by a mere notice of appeal prolong the term of imprisonment, and frustrate the operation of the historic writ of liberty. "The great purpose of the writ of habeas corpus is the immediate delivery of the party deprived of personal liberty." * * * Certain it is, at least, that the writ may not be thwarted at the pleasure of the jailer. * * * Little would be left of "this, the greatest of all writs" * * * if a jailer were permitted to retain the body of his prisoner during all the weary processes of an appeal * * *.

*People ex rel. Sabatino v. Jennings,* C.A. N.Y. (1927), 246 N.Y. 258, 158 N.E. 613, 63 A.L.R. 1458, 1459–1460.

Just because Mr. Cagle remains under indictment for murder in the first degree does not justify prolonging his imprisonment now that this Court has found that he was convicted in violation of his federal right to due process of law and must be tried again with due process, removing any presumption as of now that he is guilty as charged. The respondents-appellants appear to overlook the fact in their contention that, under the Constitution of Tennessee, a person charged with murder in the first degree is " * * * bailable by sufficient sureties, except for capital offences, where the proof is evident, or the presumption great. * * * " Constitution of Tennessee, art. 1, § 15; *State ex rel. Holloway v. Joyner* (1938), 173 Tenn. 298, 299–301, 117 S.W.2d 1 (an indictment by a grand jury does not constitute evident proof or great presumption of the guilt of the person indicted).

The fact that, if unsuccessful on appeal herein, the respondents-appellants are required to either release Mr. Cagle or cause him to be retried for a capital offense, does not appear to this Court to be sufficient reason to deny his enlargement on bail pending this appeal, and the respondents-appellants show no other reason the release of Mr. Cagle pending appeal would be inappropriate. The federal Constitution, Eighth Amendment, and the Constitution of Tennessee, art. 1, § 15, both appear to protect against an unwarranted denial of bail; bail is not to be used as a device for keeping persons in jail awaiting trial but is to enable a person to get-out and stay-out of jail until he or she has been found guilty in a proper trial while guaranteeing simultaneously his or her appearance at and for trial. " * * * Without this freedom, even those wrongly accused are punished by a period of imprisonment while awaiting trial and are handicapped in consulting counsel, searching for evidence, and preparing any available defense. It is acknowledged that admission to bail involves a risk that the accused may flee the jurisdiction. However, the number of persons who flee is minimal compared to the number who appear when called. * * * " *Workman v. Cardwell*, D.C. Ohio (1972), 338 F.Supp. 893,

898 [8], affirmed in part and vacated in part on other grounds, C.A. 6th (1973), 471 F.2d 909, certiorari denied (1973), 412 U.S. 932, 93 S.Ct. 2748, 2762, 37 L.Ed.2d 161.

The foregoing-mentioned amendments to Rule 23(c), *supra*, postdated the decision of our Court of Appeals cited by the respondents-appellants. In addition to that, as required by Rule 23(d), Federal Rules of Appellate Procedure, "special reasons" were shown therein for modification of the district court's initial order respecting the enlargement of the prisoner: the prisoner there was indicted for 2 separate offenses of assault with the intent to commit the murder in the first degree of 2 police officers, one indictment resulting in the former conviction of the prisoner and the other having been placed on the retired docket for possible future reactivation and prosecution. *Lewis v. Henderson, supra,* 356 F.2d at 106 [2]; *cf. United States ex rel. Rice v. Vincent,* C.A.2d (1973), 486 F.2d 215 (where the relator had been retried (after a reversal) and convicted again of murder in the first degree, attempted murder in the first degree, and attempted robbery in the first degree; had been sentenced to life imprisonment; had lost by unanimous affirmation on his appeal; and would commence a life-sentence if his convictions were affirmed also by the state's highest court). No such "special reasons" appear to be present with relation to Mr. Cagle; he is charged in one indictment with one murder of one private person.

Although, as observed, Mr. Cagle is presumptively entitled to release pending review, this Court is of the opinion that his enlargement pending appeal should be on the basis of a bail-bond with sufficient sureties. This is not because, if the order of this Court for release or retrial reasonably will require a retrial for a capital offense if affirmed on appeal, for the crucial factor is not the degree of the crime charged against Mr. Cagle in these circumstances, *cf. Bloss v. People of Michigan,* C.A. 6th (1970), 421 F.2d 903, 906 [5]; rather, it is because the public prosecutor for the state of Tennessee testified herein to his belief that the cir-

cumstantial evidence of murder against Mr. Cagle is "strong".[2] It is further because, if this Court's order is reversed on appeal, this Court senses an obligation to act reasonably to assure Mr. Cagle's return to the custody of the state of Tennessee for the completion of his sentence.

Therefore, it hereby is ORDERED:

1. that this Court's judgment (and order) of November 13, 1980 hereby is STAYED pending completion of the appellate process herein, Rule 8(a), *supra*; and,

2. that the petitioner-appellee shall be enlarged forthwith upon his recognizance, with sufficient sureties, in the principal amount of $25,000, pending review of this Court's decision ordering his release, Rule 23(c), *supra*.

2. In this situation, one wonders just why the state of Tennessee does not put Mr. Cagle to trial without chancing an appellate decision requiring as much.