**STATE of Tennessee, Appellee,**

v.

**James Bryson HILL, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 8, 1980.

Permission to Appeal Denied by Supreme Court April 21, 1980.

Scott Daniel, Murfreesboro, for appellant.

William M. Leech, Jr., Atty. Gen. & Reporter, Charles L. Lewis, Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Murfreesboro, for appellee.

## OPINION

DWYER, Judge.

The appellant appeals his conviction in the Circuit Court for Rutherford County for committing the offense of murder in the second degree. The jury assessed his punishment at confinement for life.

The appellant has filed twenty-one assignments of error attacking the validity of his conviction. Since his third assignment questions the sufficiency of the evidence, we shall capsulize the evidence adduced in this protracted and tedious trial.

The remains of the decedent, Bonnie Russell, a female white aged 39 were found on February 11, 1977, in a sinkhole in a remote area near Hall's Hill Road in Rutherford County. Her death resulted from a gunshot wound to the head. The high velocity projectile entered her head behind and below the right ear and exited through the left cheek, and death resulted in a matter of minutes.

An investigation into her homicide revealed that the decedent resided in Murfreesboro with her son Ricky at the time of her death. There were also two juveniles living in the home, Douglas Potts, aged 17, and his sister Robbie Potts, aged 16. Robbie had been ejected from the house by the decedent on Friday morning, January 28, 1977, because Robbie had spent the preceding night in the hospital room of the appellant, J. B. Hill. During the scuffle which occurred when the decedent was forcibly throwing Robbie out of the house, the decedent attempted to hit Robbie with an iron rod, and when the appellant intervened, the decedent swung the rod at him. After the appellant successfully thwarted her assault, he shoved her to the ground and, according to a witness, said, "I'll kill you if you come at me again with that." That evening the decedent went to a friend's apartment and found Robbie sitting in the appellant's lap. The decedent then went into another room and had sex with an unidentified man.

The next night, Saturday, January 29, the appellant and Robbie Potts and another juvenile, Ronnie Baxter, camped out on Hall's Hill Road within 200 feet of the sinkhole where Mrs. Russell's body was later found. Earlier in the day, the appellant had purchased camping supplies, a .222 rifle, and a box of ammunition. The three used the rifle for target practice, and, when they retired, Robbie and the appellant shared a sleeping bag for a short time. The following morning, the appellant returned Ronnie to his home and drove Robbie to her sister's trailer.

Also on Saturday evening the victim met a man named Thurman Tate at a friend's house near Manchester, and, after going to a night club, Tate returned with the decedent to her home and spent that night and the next night there. On Monday morning, January 31, the appellant came to the decedent's home, and she identified him to Tate as her husband. At the appellant's request Tate brought the rifle in from the appellant's car, but, becoming concerned when the appellant referred to the rifle as "a sweet old thing," he left the house.

After Tate's return an hour and a half later, Doug Potts and the decedent's son Ricky became alarmed because the decedent, who had left with the appellant, had

not returned. When the appellant arrived with Robbie Potts, they questioned him about the decedent's whereabouts. The appellant said that he had taken her to find Tate and that, when she saw Bubba Henderson in a black truck, she got out of his car and into the truck. Ricky said that Bubba Henderson had been dead for two years. The appellant then left, and Ricky, worried about his mother, stayed home from work that night, then called the police on Tuesday morning. That afternoon the police informed him that his mother was in the College Varsity Inn with the appellant. When Ricky called the motel, the appellant told him that his mother was there but that she was too drunk to talk. When Ricky persisted the appellant had Robbie Potts, who was in the room with him, make a noise to imitate the decedent. Ricky, however, recognized Robbie's voice. The appellant had signed a registration card at the motel in his name and had listed his companion as either "Ronnie or Robbie."

On February 6, 1977, after officers received information that the appellant was the last person to see the decedent, they talked to him in the county jail, where he was confined on another charge. At that time he told the officers that the decedent had been in his car with him and that she had jumped out of his car and gotten into a black truck with Bubba Henderson. When the decedent's body was found on February 11, 1977, the appellant was taken to the scene. He was fully advised of his *Miranda* rights at that time. On February 17, the appellant told the investigating officer that he did not wish to make a statement but added that he was the only one who could tell them what really happened. When questioned again on March 12, he told the officer that he had lied about Bonnie's getting into the black truck and that he and Bonnie were alone when they left her house on January 31. On March 18, the appellant told the officer that he was aware of his constitutional rights and stated that he was present when Bonnie was killed, but would not say if anybody else was present. He also said that he wanted to make a formal statement, but that he had been told by his lawyer not to and that his attorney would be mad if he knew that he had told the police about witnessing the murder. Finally, on April 9, the appellant summoned the investigating officers and told them that he had known Bonnie Russell for 25 years and that he had argued with her about his grandchild and Robbie. However, he denied threatening to kill her. He admitted drinking the weekend of Mrs. Russell's disappearance and described his camping trip with Ronnie and Robbie near the sinkhole where the body was found. He said that Robbie had accompanied Bonnie and him to the campsite and that Robbie had shot Bonnie. He explained that he had lied to protect Robbie and himself.

The appellant did not testify and offered no proof.

■ We have reviewed this record, which comprises nearly two thousand pages of testimony, keeping in mind that "the State is entitled to have the appellate court take the strongest legitimate view of the evidence in its favor . . . ." *State v. Pritchett*, 524 S.W.2d 470, 472 (Tenn.1975). Although the evidence supporting the appellant's conviction is mostly circumstantial, the standard of review is the same whether the evidence is direct or circumstantial; that is, the appellant must demonstrate that the evidence preponderates against the verdict. *State v. Brown*, 551 S.W.2d 329 (Tenn.1977). The record shows that the appellant was with Bonnie the last time she was seen alive, and he admits that they left her home together and that he drove her to the scene of the murder. It is also clear that he lied about Bonnie's getting into a truck with a man who had been dead for months and about her being in the motel room. The appellant also had purchased a high velocity rifle which was in his possession when he was arrested on an unrelated charge. He later told police officers that he was the only one who could tell them what had happened. The jury was presented with the choice of believing that Robbie Potts committed the murder, as the appellant claims, or that the appellant committed it. The verdict clearly demonstrates that

the jury did not accept the appellant's story. It is not our prerogative to reweigh or to reevaluate the evidence at trial. See *State v. Wilson*, 556 S.W.2d 232 (Tenn.1977). We think the evidence is more than sufficient to support the verdict. The evidence assignment is overruled.

■ In spite of the sufficiency of the evidence, we sustain the appellant's seventeenth assignment of error alleging that the court erred in refusing to allow questioning during cross-examination about the juvenile records of State's witnesses Ronnie Baxter and Robbie Potts. The trial court, relying on T.C.A. § 37–233 (which provides that the disposition of a juvenile and the evidence adduced in the juvenile court hearing cannot be used against him in any other court proceedings), would not allow the appellant to probe into the juvenile records of the State's witnesses. First, since there was no tender of proof made as to Doug Potts' record, the appellant has no grounds to complain about the court's limitation on cross-examination of that witness. However, we think the appellant's constitutional right to confront the witnesses against him overcomes the statutory protection of juveniles with respect to Ronnie Baxter and Robbie Potts. In view of Baxter's important testimony about accompanying the appellant when he bought the rifle, the trial court erred in ruling out questions by the defense about the witness' juvenile record which were designed to impeach him.

■ Further, we are persuaded that cross-examination of Robbie Potts about her juvenile record should have been allowed under the United States Supreme Court decision in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The appellant's tender of proof showed that Ms. Potts had been charged in juvenile court with being an accessory to breaking and entering and theft and with forgery and that she had been placed on probation indefinitely. Here, as in *Davis*, the juvenile witness was important to the prosecution, was a possible suspect in the crime charged, and had been adjudicated a delinquent and was on probation. In *Davis*, the Supreme

Court held that the defendant's right to cross-examine the witnesses against him prevailed over a statute similar to T.C.A. § 37–233, which was designed to protect the anonymity of juvenile offenders. Robbie Potts could certainly be considered a suspect in Bonnie Russell's murder, especially in light of her involvement with the appellant at the motel in pretending to be the decedent. Because of her possible bias, the appellant clearly was entitled to inform the jury about her juvenile record and probationary status so that the jurors could properly determine the weight to be accorded her testimony.

Bearing in mind that cross-examination is the greatest device ever invented for the discovery of the truth, *Hicks v. State*, 490 S.W.2d 174, 178 (Tenn.Cr.App.1972), we feel that the constitutional right of confrontation of witnesses takes precedence over the statutory protection afforded juveniles. In denying the appellant the right to effectively cross-examine Ms. Potts, the trial court committed "constitutional error of the first magnitude . . .," *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, which error cannot be held harmless beyond a reasonable doubt, particularly in view of the fact that this conviction was based almost entirely on circumstantial evidence.

■ We also sustain the appellant's twelfth and thirteenth assignments of error which challenge the trial court's allowing Lt. Cook to testify from and introduce into evidence his handwritten memoranda of the earlier statements made to him by the appellant and the transcript of the April 9th statement. Since the officer did not testify that he did not recall the substance of the statement by the defendant, his records of those statements did not fulfill the requirements of the past recollection recorded exception to the hearsay rule and were thus inadmissible. *See* McCormick on Evidence, § 302 (2d Ed. 1972) (traditional rule) (Tennessee apparently adheres to that rule. *See Hughes v. Taylor*, 29 Tenn.App. 548, 198 S.W.2d 337 (1946)).

■ Another alleged error involves the appellant's attempts to cross-examine Doug and Robbie Potts and Ronnie Baxter about prio bad acts. There was no error as Doug and Ronnie because the appellant never attempted to ask them questions about bad acts. There was likewise no error as to Robbie because the appellant did not follow the procedure mandated in *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976), of offering evidence of the prior acts at a jury-out hearing so that the court can rule on the probativeness of the evidence. Although there was such a hearing on the appellant's attempt to ask Robbie about using drugs, the trial court's ruling out such questions was within its discretion, and the appellant made no mention of other alleged bad acts until his offer of proof after the trial. Since he did not allow the court to rule on those other acts when the witness was being cross-examined, he cannot now complain about not being able to ask the questions.

■ The appellant also challenges the trial court's refusing to allow him to impeach Robbie Potts when, on cross examination, she denied making a statement to one Terry Fleming that "nobody will ever know what happened because I ain't going to say nothing, and I don't think [the appellant] will." Extrinsic evidence of prior inconsistent statements is inadmissible to impeach the statement of a witness on cross-examination as to a collateral matter. McCormick on Evidence, § 36 (2d Ed. 1972). Thus, since the subject matter of the statement offered is clearly collateral to the issues in this case, the trial court properly ruled that the appellant could not call Mr. Fleming to testify that Robbie had made the statement to him. This assignment of error is overruled.

■ A somewhat different question is presented by the testimony of Pete Williams. The trial court refused to allow the appellant's counsel to question Williams about statements which Robbie Potts allegedly made about a conversation between the deceased and her during which each woman threatened the other because of their involvement with the appellant. Earlier, on cross-examination, Ms. Potts had denied making any such statement to Williams. Williams' testimony about the alleged statement during a jury-out hearing was so contradictory and inconclusive that it in effect cancelled itself out. *See Hughes v. State*, 588 S.W.2d 296 (Tenn.1979). Consequently, it was not error for the trial court to forbid the appellant's counsel to question Williams about this matter before the jury.

■ Another of the appellant's assignments of error raises the issue of the admission at trial of statements made by him to Lieutenant Cook of the Murfreesboro Police Department. While the appellant was in jail following his arrest, Lt. Cook questioned him on several occasions about his involvement in the murder, on each occasion receiving the appellant's assurance that he knew his constitutional rights which had been previously explained to him. On April 9, 1977, the appellant sent word to Lt. Cook that he wanted to make a statement. The officer asked the appellant if he was aware of his constitutional rights, and the appellant answered affirmatively. During the course of this statement, the appellant admitted being present at the scene of the murder, but claimed that Robbie Potts shot the decedent. The appellant now asserts that he was without the aid of counsel when he made these statements, and that the statements could not be used against him. The trial court conducted a hearing, out of the jury's presence, on the admissibility of the statements made to the police and found that the appellant had previously waived his constitutional rights and that his statements were admissible. Because of this finding by the trial court and because it is clear that the appellant had knowingly waived his right to counsel, we find no error in the trial court's holding the evidence admissible.

■ We shall briefly touch some of the other assignments of error contained in the appellant's lengthy "brief". He asserts that because no written statements by the witnesses who testified at the preliminary

hearing were produced, the indictment should be dismissed. Since here, as in *Wright v. State*, 549 S.W.2d 682 (Tenn. 1977), there is no evidence that any statements were reduced to writing at the preliminary hearing, we must reject this argument. The contention that the appellant was denied a speedy trial is groundless; the trial began about seven months after his arrest. Because bail was set when the appellant procured a writ of habeas corpus, there is no merit in his argument that the indictment should have been dismissed for failure to set bail. The remark by the attorney general in his opening statement that there would be some inadmissible evidence which each side would like to present to the jury did not affect the jury's verdict, and the appellant was thus not entitled to a mistrial.

 At the time of the trial, Tennessee's death penalty statute had been declared unconstitutional, so that even though the appellant was charged with first degree murder, he was not subject to the death penalty. Consequently, the trial court acted properly in allowing the appellant only eight peremptory challenges of jurors, rather than the fifteen which he demanded. The appellant's contention that the rifle taken from his car should not have been admitted into evidence because it was seized pursuant to his illegal arrest is also without merit. There was an ample showing of probable cause for the arrest on a robbery charge (on which the appellant was imprisoned when he was charged with Ms. Russell's murder), and since the rifle was in plain view in the back seat of the appellant's car when he was arrested, it was properly confiscated and introduced at trial.

Two of the assignments of error involve the appellant's motion for a new trial. First, he claims that the failure of the trial court to provide him with a transcript of the trial before the hearing on his new trial motion hampered him at that hearing. We find no merit in this assignment. The appellant also claimed at the hearing on his new trial motion that he had newly discovered evidence which entitled

him to a new trial. However, since that evidence only served to contradict evidence adduced at trial, we find no error here.

Finally, we see no evidence to support the appellant's assertion that the trial judge was biased. On the contrary, we think he was fair and impartial in an overly long and drawn-out trial. We have considered the remainder of the assignments of error, and, finding them to be meritless, overrule them.

Since we sustain the appellant's twelfth, thirteenth, and seventeenth assignments of error, the judgment is set aside and the case is remanded for a new trial.

DUNCAN and BYERS, JJ., concur.