James Bryson HILL, Petitioner,

v.

Jimmy H. ROSE, etc., et al., Respondents.

Civ. A. No. 3–83–0084.

United States District Court, M.D. Tennessee, Nashville Division.

June 7, 1983.

Opinion on Motion for Stay June 17, 1983.

Supplemental Opinion June 29, 1983.

Scott Daniel, Murfreesboro, Tenn., for petitioner.

Jerry Smith, Nashville, Tenn., for respondents.

## MEMORANDUM OPINION AND ORDER

NEESE, Senior District Judge, Sitting by Designation.

The respondent-warden filed a timely answer. *See* order of March 14, 1983 herein. He concedes the exhaustion by the petition-

er of his available remedies in the courts of Tennessee under its laws as to each federal question presented herein. 28 U.S.C. § 2254(b).

Among the claims of the applicant is that he is in custody of the respondent-warden pursuant to the judgment of a Court of Tennessee in violation of the Constitution, Fourteenth Amendment, Due Process Clause, and of the Sixth Amendment, Confrontation Clause, and Right to Witnesses in his Favor Clause. The specific claim now urged on this Court by the applicant is that he was deprived of his immediately foregoing federal rights when he was prohibited judicially in his criminal trial from offering Mr. Maurice Arnold ("Pete") Williams as a witness favorable to his defense as well as a crucial part of his confrontation of Miss Roberta Lynn ("Robbie") Potts, a witness against him therein.

" * * * The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. * * * " *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045[2], 35 L.Ed.2d 297 (1973). " * * * The right to offer the testimony of witnesses * * * is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused [person] has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law. * * * " *Washington v. State of Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 1923[4], 18 L.Ed.2d 1019 (1967).

Each of the afore-enumerated federal constitutional violations occurred in a trial commencing July 27, 1977 in *State of Tennessee v. James Bryson Hill*, felony docket No. 6600 in the Circuit Court of Rutherford County, Tennessee, and extending into August of that year. The judgment of the conviction therein of the applicant was set-aside on appeal and the case was remanded to the aforenamed trial Court for a new trial. *State v. Hill*, 598 S.W.2d 815, 821 (Tenn.Cr.App.1980), permission to appeal denied 1980 by the Supreme Court of Tennessee. The judgment, pursuant to which the applicant is in the custody of the respondent-warden in violation of his federal constitutional rights, is of November 8, 1980 of the same Court in the same case after a retrial.

It was ordered by such Court on stipulation of the parties in advance of such second trial *inter alia* that

> defense counsel could simply rely upon the record of the former trial and proceedings which were held outside of the hearing of the jury without tendering it as proof or reading it into the record and could thereby preserve without waiving issues relating to matters contained in the record of the former trial or proceedings by simply designating after the conclusion of the trial, those portions of the former proceedings which defense counsel wished to rely upon in support of issues raised in the second trial * * *.

On November 3, 1980, when matters involving the testimony of Mr. Williams and other members arose on the retrial of the applicant, the trial Court ruled again:

> The prior rulings would be the same as the rulings if presented here * * *. Note the prior record becomes part of this record. I intend to rule the same way on all of those except the one [not involving Mr. Williams' testimony] that you are raising here today. That is what I advise you.

For such reason, this Court deems the foregoing federal constitutional violations to have occurred also on the retrial of the applicant which resulted in the aforementioned judgment of November 8, 1980, *supra.*

These matters were preserved properly and presented fairly to the courts of Tennessee as federal constitutional questions by the applicant, and the intermediate criminal-appellate Court of Tennessee rejected those claims, stating *inter alia:*

" * * * [H]e [the applicant] says the trial court erred in refusing to allow certain portions of the prior testimony of Pete Williams to be read into evidence. Pete Williams was unavailable to testify at the present [second] trial and his prior testimony, to the extent that the trial court had found it admissible at the first trial, was read to the jury. The trial court would not allow the portions of the prior testimony that had been excluded at the first trial to be read into evidence at the present trial. The excluded portions of his testimony were considered by our [appellate] Court on the defendant's [applicant's] direct appeal of his first conviction and we found no error. *State v. Hill, supra,* at 820. Since *the facts on which our prior ruling was based are the same facts now presented,* our prior holding on this issue is the law of the case. * * * Therefore, *the trial court properly excluded the questioned evidence.*

\* \* \* \* \* \*

" * * * [W]e note that *the* defendant [*applicant*] couches most of his issues in language to suggest that he has been denied his due process rights to a fair trial. * * * The record demonstrates that the defendant had a fair trial. * * * From our review of the entire record, we find that the defendant has *suffered no constitutional deprivations in any manner.*

"The judgment of the trial court is affirmed."

*State of Tennessee,* appellee, v. *J.B. Hill,* appellant, no. 81–65–III (Rutherford County) in the Court of Criminal Appeals of Tennessee, opinion filed January 18, 1982, permission to appeal denied April 26, 1982 by the Supreme Court of Tennessee, (emphases supplied by this writer).

From a review of the expanded record, it appears that an evidentiary hearing is not required herein; so there will be disposition of the applicant's petition as law and jus-

tice require on the record in the state courts. Rule 8, 28 U.S.C. fol. § 2254; *see* also 28 U.S.C. § 2243. The " * * * basic, primary, * * * [and] * * * historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators' [1] * * *," *Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963), appear satisfactorily to have been determined reliably by the courts of Tennessee. But the appellate holding thereof, that the applicant was not deprived by the state of Tennessee of his federal rights to due process of law, to offer a witness favorable to him, and to confront effectively a witness against him, presents " * * * a mixed determination of law and fact that require[d] the application of the [foregoing] legal principles to the historical facts of this case. *Cf. Brewer v. Williams,* 430 U.S. 387, 403–404, 97 S.Ct. 1232, 1241–1242[[7]], 51 L.Ed.2d 424, (1977); *Neil v. Biggers,* 409 U.S. 188, 193, n. 3, 93 S.Ct. 375, 379, n. 3 [[5]], 34 L.Ed.2d 401 (1972). That holding [wa]s open to review on [this] collateral attack in a federal court [on the applicant's state conviction]. * * *" *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714–1715[2], 64 L.Ed.2d 333 (1980).

This Court's independent review of the record in the state proceeding, *Stidham v. Wingo,* 452 F.2d 837 (6th Cir.1971), reflecting the reliability of the state court findings, *supra,* emphasizes the erroneous legal determination implicated: *E.g.,* Miss Potts testified before the jury:

(1) that Mr. Hill had said he was required to "be good" to Ms. Russell because "she knew something on" him;

(2) that she did not kill Ms. Russell;

(3) that she did not threaten to kill or do bodily harm to Ms. Russell;

(4) that she did not even go to any sinkhole near the applicant's campsite;

---

**1.** To the extent only that the credibility of Miss Potts was allowed to be placed in issue, of

course.

(5) that she needed to "smooth-out" her mind about events before giving a statement to defense counsel;

(6) that she could not remember whether Ms. Russell had warned her: "I'll get you, you bitch; you're sleeping with my man.";

(7) that she had said pretrial that Mr. Hill had not said he intended to hurt Ms. Russell; and,

(8) that she knew positively that she did not make the questioned statement to Mr. Williams or say anything to him substantially to that effect.

It is of some significance in addition that the prosecuting attorney stated, in the jury's hearing, when Miss Potts was being asked about her statements to Mr. Williams exculpatory of Mr. Hill, that Mr. Williams was going to testify,[2] *infra.*

█ There is little doubt that 28 U.S.C. § 2254, *supra,* authorizes the use of the federal writ of habeas corpus to challenge a conviction upon the claims of " * * * 'disregard of the constitutional rights of the [applicant], * * * where the writ is the only effective means of preserving his rights.' * * * " *Wainwright v. Sykes,* 433 U.S. 72, 79, 97 S.Ct. 2497, 2502, 53 L.Ed.2d 594 (1977), *reh. den.,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977).

For present purposes, it suffices to encapsulate the following salient facts: The applicant, married with at least one grandchild, was involved simultaneously, both romantically and physically, with Ms. Bonnie Russell, a 39-year-old woman, and Miss Potts, a 16-year-old girl. He suffered from a liver-ailment, which he had been advised medically would soon be terminal, and said Ms. Russell and his own wife were two persons who should die that he would "take with" him. He intervened as Ms. Russell undertook to evict Miss Potts violently from her (Ms. Russell's) home as an ostensibly permanent guest; and, when Ms. Russell turned on him and swung an iron-rod in his direction, he pushed her down and told her he would kill her " * * * if you come at me again with that. * * * "

Ms. Russell disappeared January 31, 1977. Her body was found in a sinkhole near the applicant's campsite on February 11, next. The applicant told a police officer on the ensuing March 18 " * * * that he was present when Bonnie was killed, but would not say if anybody else was present. * * * " *State v. Hill,* 598 S.W.2d at 818.

" * * * The record shows that the appellant [applicant, here] was with Bonnie [Ms. Russell] the last time she was seen alive, and he admits that they left her home together and that he drove her to the scene of the murder. * * * [H]e lied about Bonnie's getting into a truck with a man who had been dead for months and about her being in [a] motel room [with him, when, in actuality, Miss Potts was then in the motel room with him.] The appellant had also purchased a high velocity rifle which was in his possession when he was arrested on an unrelated charge. He later told police officers that he was the only one who could tell them what had happened. * * * " *Ib.,* 598 S.W.2d at 818.

" * * * [O]n April 9, the appellant summoned the investigating officers and told them that he had known Bonnie Russell for 25 years and that he had argued with her about his grandchild and Robbie. However, he denied threatening to kill her. He admitted drinking the weekend of Mrs. Russell's disappearance and described his camping trip with Ronnie Baxter [another juvenile] and Robbie near the sinkhole where the body was found. He said that Robbie had accompanied Bonnie and him to the campsite and that Robbie had shot Bonnie. He explained that he had lied to protect Robbie and himself. * * * " *Id.*

Mr. Hill's claim to have been nearby during Miss Potts' murder of Ms. Russell did not result in her arrest or indictment therefor; the applicant was indicted on a charge of murder in the 1st° and convicted of murdering Ms. Russell in the 2nd° in a trial in which he confronted physically Miss

---

2. The effect on the jurors of Mr. Williams' testimony without the inclusion of the impeaching contradiction of Miss Potts, when the trial Court forbade such inclusion, is imaginable.

Potts as a witness against him. He defended the accusation against him on his plea that he was not guilty as charged and also that Miss Potts had murdered Ms. Russell.

When the original judgment of conviction of Mr. Hill was reversed on appeal on a ground not implicated herein, *State v. Hill, supra*, in the course of disposing of the applicant's assignments of error, the intermediate criminal-appellate Court of Tennessee ruled:

> * * * The trial court refused to allow the appellant's counsel to question Williams about statements which Robbie Potts made about a conversation between the deceased [Ms. Russell] and her during which each woman threatened the other because of their involvement with the appellant. Earlier, on cross-examination, Ms. Potts had denied making any such statement to Wiltoliams [sic: Williams]. Williams' testimony about the alleged statement during a jury-out hearing was so contradictory and inconclusive that it in effect cancelled itself out. *See Hughes v. State*, 588 S.W.2d 296 (Tenn. 1979). Consequently, it was not error for the trial court to forbid the appellant's counsel to question Williams about this matter before the jury.

> * * * * * *

*Ib.*, 598 S.W.2d at 820.

I

■ The testimony of Mr. Williams, which counsel for the applicant was forbidden by the criminal trial court to present before the jury for its weighing in the light of Miss Potts' and his credibility, related to Miss Potts' purported account to Mr. Williams of the conversation between her and Ms. Russell and between her and Mr. Williams. According to Mr. Williams, Miss Potts said that Ms. Russell had told her: "If you don't stay away from J.B. Hill, I'll kill your ass!", and that she *(Miss Potts) had then said to Mr. Williams:* "I'd like to see her try to kill my ass, because I have learned how to shoot J.B.'s gun and, if Bonnie doesn't stay-away from J.B., I'll fix

her ass to where she will stay-away from him for good!"

Defense counsel had asked Miss Potts on cross-examination: "Do you remember stating to Pete Williams on that occasion that Bonnie [Ms. Russell] had told you if you don't stay-away-from J.B. Hill (quote) I'll kill your ass? [end of quote]." The witness denied having so stated to Mr. Williams. She was then asked by defense counsel: "Do you remember saying that— 'Pete, I've learned how to shoot a gun and if Bonnie doesn't stay-away from J.B. I'll fix her ass to where she will stay-away from him for good'?" Miss Potts denied ever making such a statement substantially to that effect. The prosecution objected to these inquiries unless defense counsel " * * * can state to the Court that he intends to bring [in] these witnesses [Mr. Williams and Mr. Terry Fleming] and let them state that this is what she said."

The trial Court then stated: "Well, if he [defense counsel] doesn't put them on the stand to substantiate this, I will then instruct the jury to ignore this testimony." After the jury-out interrogation of Mr. Williams, the trial judge ruled:

> * * * [T]his is a perfect example of the reasons for this rule: If the inquiry on cross-examination is as to inconsistent statements about collateral matters, the cross-examiner must take the answer. He cannot bring on other witnesses to prove the making of the alleged statement. Now, I consequently rule that you [defense counsel] are bound by her [Miss Potts'] answers. And, you cannot bring on these other witnesses. * * * I rule that it [the testimony of Mr. Williams and others] is inadmissible * * *.

The trial judge subsequently advised the jury:

> * * * [Y]esterday Miss Roberta Potts was on the stand. Mr. Daniel [defense counsel] was cross-examining her and inquiring into statements that she allegedly had made to various individuals. The [district] [a]ttorney [g]eneral objected to that inquiry; I overruled the [a]ttorney [g]eneral's objection. At that time I

ruled that Mr. Daniel could ask Miss Potts those questions about statements that she had made to—allegedly made to other individuals. In the course of making that ruling, I said to Mr. Daniel: you will be required to bring in those witnesses to contradict her answers if necessary. I erred in making that ruling, that he would be required to bring in those witnesses:

The rule of law is "if inquiry on cross-examination is as to inconsistent statements about collateral matters, the cross-examiner must take the answers. He cannot bring on other witnesses to prove the alleged statements." Therefore, I have this morning reversed my ruling, and he cannot bring on other witnesses to contradict her answers, if it was in his judgment appropriate to do so: he is bound by her answers on those collateral matters. * * *

(It is irrelevant to a disposition of this matter as law and justice require, but it is interesting to notice that the trial judge had stated earlier in the presence of the jury, and repeated it on the immediately foregoing occasion, that the defense "would be required to bring in * * * witnesses." Only the prosecution had the burden or duty in a criminal case of calling witnesses or producing evidence. *Cf.: Patterson v. New York*, 432 U.S. 197, 200–201, 97 S.Ct. 2319, 2321–2322, 53 L.Ed.2d 281 (1977); *United States v. Gainey*, 380 U.S. 63, 70–71, 85 S.Ct. 754, 759, 13 L.Ed.2d 658 (1965); *Brouillette v. Wood*, 636 F.2d 215, 218[3], 218–219[4] (8th Cir.1980), *cert. den.*, 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981).) The salient point for consideration here is that the trial judge ruled clearly that Mr. Williams' pertinent testimony could not be heard by the jury because it constituted inconsistent statements as to collateral matters.

Thus, contrary to the criminal appellate Court's view in the context of the *Hughes* rule, *supra*, of the excluded testimony of Mr. Williams, actually it was excluded as

extrinsic evidence of prior inconsistent statements of a witness on cross-examination as to a collateral matter. *See* and *cf.: State v. Hill, supra*, 598 S.W.2d at 829[9, 10] (relating to another witness, Mr. Fleming, *supra*.)

Furthermore, the questions asked Miss Potts by defense counsel do not seem to have been forbidden by such collateral-matter rule of Tennessee as declared by its highest court. Its rule has long been:

"* * * An approved test of the question whether or not a fact inquired of in cross-examination is collateral is this: would the cross-examining party be entitled to prove that fact as a part of, and as tending to establish, his case? * * * Collateral facts are defined as 'those which afford no reasonable inference as to the principal matters in dispute.' * * *"

*Saunders v. City & Suburban R. Co.*, 99 Tenn. 130, 41 S.W. 1031, 1034 (Tenn.1897). It is clear that the principal matters in dispute in the applicant's criminal trial were: (1) whether Mr. Hill was guilty beyond a reasonable doubt, as charged in the indictment, of the homicide of Ms. Russell? and (2) whether Miss Potts had committed such homicide, as claimed by the defense, and was denying the account Mr. Williams had given of her conversation with Ms. Russell, as well as her subsequent comment concerning it to Mr. Williams, to protect herself from prosecution for having killed Ms. Russell. *Cf. Davis v. Alaska*, 415 U.S. 308, 317–318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974) (The petitioner for habeas corpus had the right "* * * to seek out the truth in the process of defending himself. * * *" 415 U.S. at 320, 94 S.Ct. at 1112.)

So it is that Mr. Williams' rejected testimony would have afforded a reasonable basis as to the principal matters in dispute between the state of Tennessee and Mr. Hill and did not relate to collateral facts under Tennessee law.[3] The respondent-

---

**3.** This being true, there is no occasion for this Court to strike a balance between the right of

the applicant to present relevant and competent evidence, on the one hand, and the accommoda-

warden claims that the applicant would not have been entitled under Tennessee law to have sought to prove that Miss Potts carried through with her alleged threats, because the statements from Mr. Williams would have constituted hearsay and was inadmissible; however, in the protection of the federal rights of Mr. Hill in " * * * these unique circumstances, 'the hearsay rule may not be applied mechanistically to defeat the ends of justice.' *Chambers v. Mississippi,* [*supra*], 410 U.S. * * * [at] 302, 93 S.Ct. * * * [at] 1049 * * *." *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151–2152[1], 60 L.Ed.2d 735 (1979). While Mr. Williams' testimony, regarding what *Miss Potts said Ms. Russell may have said,* might be denominated accurately as hearsay, it can hardly be argued convincingly that what Mr. Williams would have testified as regards what *Miss Potts said to him* (Mr. Williams) was hearsay also.

The applicant enjoyed the constitutional right to present as his own witness Mr. Williams to testify as to the fact of what Miss Potts said to him as a part of, and as tending to establish, the applicant's case in defense. *Washington v. State, supra.* Thus, Tennessee's rule regarding collateral facts relating to cross-examination, enunciated in *Saunders v. City & Surburban R. Co., supra,* had no application here. As to that part of the proferred testimony of Mr. Williams, it " * * * would have been relevant and material, * * * and vital to the defense. * * * " *Cf. Washington v. State of Texas, supra,* 388 U.S. at 16, 87 S.Ct. at 1921–1922.

" * * * Few rights are more fundamental than that of an accused [person] to present witnesses in his own defense. * * " *Chambers v. Mississippi,* 410 U.S. at 302, 93 S.Ct. at 1049. " * * * A person's right * * * to an opportunity to be heard in his defense—a right to his day in court—* * * [is] * * * basic in our system of jurisprudence, * * * includ[ing] * * * a right to

examine the witnesses against him * * * [and] * * * to offer testimony * * * " in his defense. *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507–508[11], 92 L.Ed. 682 (1948). Mr. Hill enjoyed a guaranty that he would be permitted to answer the criminal charge against him

" * * * in a manner now considered fundamental to the fair administration of American justice—through the calling of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence. In short, the [Sixth] Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it. * * * " *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2533[3], 45 L.Ed.2d 562 (1975).

This Court has no difficulty in so doing and hereby FINDS and CONCLUDES that the federal constitutional right of the applicant in his criminal trial to due process was violated when he was deprived in his criminal trial by the state of Tennessee of his right to a fair opportunity to defend himself against its accusation.

II

Mr. Williams indutibly was offered by the applicant as a witness favorable to his contention in defense. This witness was not permitted by the trial Court to testify before the jury and attack the trustworthiness of Miss Potts, because of the objection of the prosecuting attorney. " * * * '[T]he state has no interest in interposing any obstacle to the disclosure of the facts, unless it is interested in convicting accused parties on the testimony of untrustworthy persons.' * * * " *Gordon v. United States,* 344 U.S. 414, 419, 73 S.Ct. 369, 373, 97 L.Ed. 447 (1953).

This Court hereby FINDS and CONCLUDES also that the right of the applicant in his criminal trial for obtaining a witness in his favor was violated by the state of Tennessee.

tion of other legitimate interests of the state of Tennessee in its process of criminal trials which might have prevented the applicant's presenting

the testimony of Mr. Williams. *Cf. Chambers v. Mississippi, supra,* 410 U.S. at 295, 93 S.Ct. at 1045.

### III

When Miss Potts was offered as a witness for the prosecution by the state of Tennessee and had denied on cross-examination by the defense that she had voiced to Mr. Williams the threat to kill Ms. Russell, the applicant's federal constitutional right to confront Miss Potts as an adverse witness included his right to undertake to prove by Mr. Williams that she was unworthy of belief. The Confrontation " * * * Clause envisions

"a personal examination and cross-examination of the witness, in which the accused [person] has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him [or her] to stand face to face with the jury in order that they may look upon him [or her], and judge by his [or her] demeanor upon the stand and the manner in which he [or she] gives his [or her] testimony whether he [or she] is worthy of belief." * * *

"These means of testing accuracy are so important that the absence of proper confrontation at trial 'calls into question the ultimate "integrity of the fact-finding process."' * * * " *Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–2528[2], [3], 65 L.Ed.2d 597 (1980).

" * * * [O]ne critical goal of cross-examination is to draw out discrediting demeanor to be viewed by the factfinder. * * * " *Id.*, 448 U.S. at 63 n. 6, 100 S.Ct. at 2537–2538 n. 6. On cross-examination of Miss Potts, defense counsel had extracted from her, *inter alia*, the following:

"Q. 'Isn't it true that the story you have made up, told here in this courtroom, was concocted with the idea of covering-up your whereabouts and what you did?'

"A. 'No, sir, what I've told is true as far—to my knowledge—is, true.'

"Q. 'Isn't it true that you have lied to this Court?'

"A. 'It is not.'

\*        \*        \*        \*        \*        \*

"A. 'I am telling you the truth as far as I know. I mean—what reason would

I have to be jealous of him [the defendant, Mr. Hill]?'

"Q. 'You liked having an older man—particularly this older man?'

"A. 'No.'

"Q. 'Isn't it true that you have lied about one-thing-after-the-other in order to cover-up facts?'

"A. 'It is not.'

"Q. 'And, isn't it true that you shot Bonnie Russell?'

"A. 'It is not.'

\*        \*        \*        \*        \*        \* "

This testimony elicited from Miss Potts on cross-examination was blatantly inconsistent with her earlier purported statements to Mr. Williams; her demeanor before the jury at that time indicated she may have harbored an interest in giving testimony favorable to the state of Tennessee—and conceivably to herself—and against the applicant. At this point, it was highly relevant for the defense to be able to present the rejected testimony of Mr. Williams and discredit her as a witness therewith, thus giving the jury a complete view of Miss Potts' demeanor.

" * * * [A] witness may be impeached [and, therefore, discredited] with evidence tending to show that he [or she] has an interest in giving testimony favorable to the State and against the defendant. * * * " *Arizona v. Washington*, 434 U.S. 497, 511 n. 30, 98 S.Ct. 824, 833 n. 30, 54 L.Ed.2d 717 (1978). " * * * A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness. * * * " *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136[1], 45 L.Ed.2d 99 (1975).

" * * * [O]ne of the important objects of the right of confrontation was to guarantee that the fact finder had an adequate opportunity to assess the credibility of the witnesses. * * * " *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541[2], 21 L.Ed.2d 508 (1969). " * * * 'There are few subjects, perhaps, upon which this [Supreme] Court [of the United States] and other courts have been more nearly unani-

mous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' * * * " *Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 1320[2], 20 L.Ed.2d 255 (1968).

It is conceivable that Miss Potts' memory of anything pertinent she may have said to Mr. Williams may have been faulty, or, of course, she might have been a perjurer. *See Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

The prohibited testimony of Mr. Williams, when compared with that of Miss Potts, was admissible to afford a basis for a factual inference, urged by the defense, that Miss Potts was protecting herself by her testimony from prosecution for having killed Ms. Russell. *Cf. Davis v. Alaska, supra.* In the absence of his testimony, it is inferrable reasonably, Mr. Hill could not have received a constitutionally fair trial. *Cf. Parker v. Gladden,* 385 U.S. 363, 365, 87 S.Ct. 468, 470[5], 17 L.Ed.2d 420 (1966).

It was only the trial Court, rather than the jury, which weighed the testimony of Mr. Williams in comparison with that of Miss Potts. " * * * '[T]he truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts in a case, leaving the credit and weight of such testimony to be determined by the jury.' * * * " *Washington v. State of Texas, supra,* 388 U.S. at 22, 87 S.Ct. at 1925[6]. The jury in Mr. Hill's trial was deprived of the opportunity of its members to have said where the truth between Miss Potts and Mr. Williams lay when Mr. Williams was forbidden to testify fully by the state of Tennessee.

This Court hereby FINDS and CONCLUDES that Mr. Hill was deprived in his criminal trial by the state of Tennessee of his federal constitutional right to be confronted by Miss Potts as a witness against him, despite the fact that he was permitted to physically confront and cross-examine her, because of the immediately foregoing circumstances.

Because of the nature of the disposition of the petitioner's application, it would be but a redundancy to consider the remaining grounds for relief included therein. Those, accordingly, hereby are PRETERMITTED.

The detention of the petitioner Mr. Hill pursuant to the judgment of November 8, 1980 of the Circuit Court of Rutherford County, Tennessee in *State of Tennessee v. James Bryson Hill,* felony docket no. 6600, being void as resulting from violations by the state of Tennessee of the Constitution of the United States of America, he is entitled to release from the custody of the respondent-warden pursuant to the judgment of that date. However, Mr. Hill may be tried yet another time by the state of Tennessee under the indictment in felony docket no. 6600, *supra,* or another indictment. *Irvin v. Dowd,* 366 U.S. 717, 728, 81 S.Ct. 1639, 1645–1646[13], 6 L.Ed.2d 751 (1961).

This Court, in disposing of this matter " * * * as law and justice require * * *," 28 U.S.C. § 2243, *supra,* may delay the discharge of the petitioner from custody of the state of Tennessee for such reasonable time as may be necessary to have him taken before the aforenamed Court of the state of Tennessee so that the defect which renders necessary his discharge from such judgment of November 8, 1980, *supra,* may be corrected. *Ib.,* 366 U.S. at 729, 81 S.Ct. at 1646[14], citing and quoting from *Mahler v. Eby,* 264 U.S. 32, 46, 44 S.Ct. 283, 288–289[11], 68 L.Ed. 549 (1924). An appropriate order is being entered to effectuate such purpose.

### ON MOTION FOR STAY

The respondent-appellant Mr. Jimmy H. Rose moved this Court, Rule 8(a), F.R.App.P., for a stay of the enforcement of its judgment herein of June 7, 1983 under Rule 62, F.R.Civ.P., pending the disposition of his appeal therefrom. The Rules of Civil Procedure must be read in habeas corpus proceedings in connection with Rules 8, 22 and 23, F.R.App.P. *Cf.*

*Schlanger v. Seamans*, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997–998 n. 4, 28 L.Ed.2d 251 (1971), *reh. den.*, 402 U.S. 990, 91 S.Ct. 1671, 29 L.Ed.2d 156 (1971).

▌ Stays of the judgment of a district court pending appeal are authorized by Rule 8(a), F.R.App.P.; *Cagle v. Davis*, 520 F.Supp. 297, 311[12] (D.C.Tenn.1980), *aff'd.*, 663 F.2d 1070 (table) (6th Cir.1981). However: "Pending review of a decision ordering the release of a prisoner in * * * a [habeas corpus proceeding], the prisoner shall be enlarged upon his recognizance, with or without surety * * * ". Rule 23(c), F.R.App.P.; *Jago v. U.S.Dist.Ct., N.Dist. of Ohio, E.Div. at Cleveland*, 570 F.2d 618, 623 (6th Cir.1978).

▌ To obtain a stay of such judgment herein, the respondents must show (1) a likelihood that they will prevail on the merits of their appeal; (2) irreparable injury to themselves unless the stay is granted; (3) no substantial harm to other persons; and (4) no harm to the public interest. *Cagle v. Davis, supra*, 520 F.Supp. at 311. The claims of the respondent appellant seem to be: (a) that a question of law exists [on appeal] over which reasonable minds [in the judiciary] could differ (b) if the appellant prevails upon appeal, his right of appeal will be rendered meaningless if the State of Tennessee is forced to re-try petitioner before a decision on appeal can be rendered; and (c) Mr. Hill has been convicted of the crime of murder.

Although the averments of the respondent-appellant did not pass muster under that test, this Court's judgment of June 7, 1983 herein is subject to review, on appeal, by the Court of Appeals of this Circuit, 28 U.S.C. § 2253, and the refusal of this Court to issue the requested stay order, and thereby deny the sovereign state of Tennessee its right to appellate review, would appear to outweigh in this instance any harm Mr. Hill might suffer by the granting of the stay requested by the respondent-appellant. *Cf. Pitcher v. Laird*, 415 F.2d 743

(5th Cir.1969). Heavy weight in that balancing is accorded the fact that Mr. Hill is to be enlarged upon his recognizance to this Court pending further judicial review, Rule 23(c), *supra; United States ex rel. Thomas v. State of New Jersey*, 472 F.2d 735, 742 (3d Cir.1973), *cert. den.*, 414 U.S. 878, 94 S.Ct. 121, 38 L.Ed.2d 123 (1973), in the light of the appeal by the respondent-appellant.

"Where a state prisoner has obtained from a [federal] district court a decision that his state confinement is unlawful, he is entitled to an order that such confinement be ended. The district court's * * * order * * * may unconditionally order the prisoner's release, or it may order his release at some time in the near future if, in the meantime, he has not been afforded a new trial." *Ib.*, 472 F.2d at 742. Mr. Hill was ordered released from his confinement unless retried within a reasonable time. It is assumed the petitioner-appellee will receive a speedy retrial in accordance with the promise to him of the federal Constitution, Sixth Amendment; whether that will have occurred before or after the processes of judicial review of this Court's judgment of June 7, 1983 is a matter unripe for consideration. However that situation may be, there is "a very strong presumption that a petitioner holding a final judgment that his detention is unlawful should not be left in state custody." *Ib.*, 472 F.2d at 743. " 'If the custodian deems release pending appeal to be inappropriate, or if he deems it appropriate to request that bail with surety be fixed, the custodian should * * * apply * to the district judge who rendered the decision. * * * ' " *Cagle v. Davis, supra*, 520 F.Supp. at 311.

Therefore, it hereby is ORDERED:

(1) that the execution of this Court's judgment (and order) of June 7, 1983 herein hereby is STAYED pending completion of the review process herein, Rule 8(a), *supra;* and,

---

* Any such application should propose the condition of the undertaking and, if applicable, the

amount of the bail-bond.

(2) the petitioner-appellee shall be enlarged upon his recognizance to this Court without surety pending review of this Court's decision, ordering his release if not retried within a reasonable time; however, such enlargement hereby is also STAYED until midnight, June 25, 1983 to afford the respondents time to make the aforementioned application(s).

## SUPPLEMENTAL OPINION

Counsel for both parties hereto are in error as to the applicability to this proceeding of the provisions of 18 U.S.C. § 3146; the release of a prisoner pending review of a decision ordering his or her release by writ of habeas corpus is governed specifically by Rule 23(c), F.R.App.P. *United States v. Dansker*, 561 F.2d 485, 486–487 (3d Cir.1977). The Court has sufficient information and data to adjudicate the petitioner-appellee's motion * for a reduction in the bail-bond fixed heretofore without the redundancy of an oral hearing and certainly oral argument would be unproductive.

█ The protracted record of the petitioner-appellee, both in-prison and out, is not conducive to his release pending the review of this Court's order on his personal recognizance; at the same time, requiring bail by bond in an amount higher than that calculated to serve as an additional assurance of the presence of the petitioner-appellee as required is "excessive" under the Constitution, Eighth Amendment. *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 3[4], 96 L.Ed. 3 (1951). The state of Tennessee required pretrial bail initially of Mr. Hill by a bond in the amount of $40,000, which he was unable to secure.

This Court's order of June 27, 1983, therefore, hereby is AMENDED so as to require the execution of an appearance bond in the amount of $40,000 and the deposit of $4,000 in the registry of this Court in cash or acceptable security; such deposit shall be returned to its depositer(s) immediately upon the performance by the

petitioner-appellee of the conditions of his release.

---

* Some of the resulting problem could have been avoided if the petitioner-appellee had moved under Rule 23(c), *supra,* soon after June 7, 1983 for release pending review.