# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs June 17, 2014

## STATE OF TENNESSEE v. DAVID ORLANDO AVINGER

**Appeal from the Criminal Court for Davidson County**
**No. 2013-A-71   Mark Fishburn, Judge**

_____

**No. M2013-01643-CCA-R3-CD - Filed August 25, 2014**

_____

Appellant, David Orlando Avinger, was indicted by a Davidson County grand jury for first degree premeditated murder, first degree felony murder, and especially aggravated robbery. After a jury trial, Appellant was convicted of the lesser included offense of second degree murder, as well as the charged offenses of felony murder and especially aggravated robbery. The trial court merged the convictions for second degree murder and felony murder, and Appellant was sentenced to an effective life sentence. On appeal, Appellant challenges the sufficiency of the convicting evidence and alleges that the trial court impermissibly limited defense counsel's cross-examination of a witness. After reviewing the record, we find that the evidence was sufficient to convict Appellant and that there was no error in the ruling of the trial court related to the limitation of the witness's testimony. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

Jack Byrd, Nashville, Tennessee for the appellant, David Orlando Avinger.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Janice Norman, Assistant District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

-1-

*Factual Background*

On December 12, 2009, Vincent Perkins arranged to meet with Antoinette Reynolds in the parking lot of a Walgreens to sell her a quarter pound of marijuana, a much larger quantity than their usual transactions entailed. Mr. Perkins was picked up by his friend, Bryant Porter, and Mr. Porter's half-brother, Eric Anderson. Once at the Walgreens, a black female approached Mr. Porter's car and got in the back seat. She said her cousin was paralyzed and that Mr. Perkins would have to go over to the other car, a gold Ford Focus. Mr. Perkins and the female exited the car, retrieved something from the trunk, and went over to the Focus. Mr. Perkins and the woman both got into the passenger side of the Focus, which then drove off quickly. Mr. Anderson and Mr. Porter attempted to follow the Focus, but lost sight of it. Mr. Porter attempted to call Mr. Perkins; even though Mr. Perkins did not respond, Mr. Porter could hear in the background a male voice repeatedly saying "get out of the car." Mr. Porter called Mr. Perkins again, and Mr. Perkins told him, "they shot me." Mr. Porter then called 911.

Officer Clifton Huffmaster of the Metropolitan Nashville Police Department was on patrol on December 12, 2009. He was dispatched to a house on Howard Street, where an individual flagged him down and directed him to a front porch. Officer Huffmaster found Mr. Perkins lying on the porch, suffering from a gunshot wound to his chest. Mr. Perkins' arms were scraped and covered in mud. Officer Huffmaster attempted to get some information from Mr. Perkins while waiting for the ambulance to arrive. Mr. Perkins told the officer his name and date of birth, but did not say who shot him. Mr. Perkins later died at the hospital.

In December of 2009, Tequeila Burns was living with her then-girlfriend, Antoinette Reynolds. On December 12, 2009, Ms. Burns drove Ms. Reynolds over to Appellant's house. Ms. Reynolds and Appellant were friends. Because Appellant was wheelchair bound, Ms. Reynolds had to assist him into the front seat of Ms. Burns' gold Ford Focus. The three of them then proceeded to drive to the Walgreens parking lot. Ms. Burns testified at trial that she did not know why they were going to Walgreens.

Ms. Burns backed the Focus into a parking spot, and Ms. Reynolds walked over to another car in the parking lot. Ms. Reynolds then returned with Mr. Perkins, who was carrying a Walmart bag. Ms. Burns did not know Mr. Perkins. Mr. Perkins handed the bag to Appellant, who then instructed Mr. Perkins to get into the car. Appellant then told Ms. Burns to drive away. Ms. Burns drove about a block and a half before Appellant told her to stop. Appellant repeatedly demanded that Mr. Perkins get out of the car. Mr. Perkins refused. Appellant drew a gun and told Mr. Perkins he would shoot him if he did not get out of the car by the time he counted to three. When Mr. Perkins did not get out of the car,

Appellant shot him. Mr. Perkins fell out of the car, and Appellant told Ms. Burns to drive away.

Ms. Burns' Focus was processed by the police for physical evidence. A small amount of blood, a bullet, and fingerprints belonging to Ms. Burns and Ms. Reynolds were found. No fingerprints or DNA was found connecting Appellant to the vehicle. A bag of marijuana was recovered from the residence shared by Ms. Burns and Ms. Reynolds. Ms. Burns testified at trial that Appellant had taken the marijuana with him when he left her car, but Ms. Reynolds later said that he split it with her.

Cell phone records for Mr. Perkins, Ms. Reynolds (who shared a phone with Ms. Burns), and Appellant were obtained. There were numerous phone calls and text messages between Mr. Perkins and Ms. Reynolds that clearly established that they were arranging a drug transaction. They discussed a price of $375 for the quarter pound of marijuana as well as possible locations to meet for the sale. There were also several intermittent calls between Ms. Reynolds and Appellant during the same period of time. There was no activity on Appellant's phone for almost half an hour around the time that the shooting occurred.

Sarah Mitchell was Appellant's next-door neighbor. She testified for the defense at trial that Appellant was with her the evening of December 12, 2009. She and Appellant were smoking marijuana together outside of Appellant's house. A woman named "Nette" arrived in a gold Ford Focus and sold a large bag of marijuana to Appellant. Ms. Mitchell testified that she and Appellant then went to her house to have dinner with her family. She testified that they downloaded ring tones and sent them to each other's phones. Ms. Mitchell testified that Appellant was at her house for several hours. She did not recall seeing him talk on the phone. Ms. Mitchell testified that she told the U.S. Marshals who were looking for Appellant that she had last seen him the day of the murder, but she never told them that he was with her during the time the murder took place.

On January 18, 2013, Appellant was indicted by a Davidson County grand jury for first degree murder, felony murder, and especially aggravated robbery. Ms. Reynolds was indicted as a co-defendant for felony murder and especially aggravated robbery. After a trial, the jury returned a verdict on February 7, 2013, finding Appellant guilty of the lesser-included offense of second degree murder, as well as guilty of felony murder and especially aggravated robbery. The trial court merged the convictions for second degree murder and felony murder and sentenced Appellant to life. The trial court also imposed a concurrent twenty-year sentence for especially aggravated robbery, for a total effective sentence of life in prison. Appellant filed a motion for a new trial, which was denied on June 19, 2013. Appellant filed a timely notice of appeal.

*Analysis*

*I. Sufficiency of the Evidence*

Appellant argues that the evidence presented at trial was insufficient to support his convictions. Specifically, he contends that there was no credible witness testimony or physical evidence placing him inside the gold Ford Focus or connecting him in any other way to the shooting of the victim. Additionally, he asserts that the "clear and uncontroverted testimony" of Ms. Mitchell provided him with an alibi during the time in which the murder took place. The State disagrees, arguing that the evidence established that Appellant shot the victim after refusing to pay for the marijuana he had obtained from the victim.

When a defendant challenges the sufficiency of the convicting evidence, the standard of review applied by this Court is "whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)); *see Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); Tenn. R. App. P. 13(e). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The jury's verdict replaces the presumption of innocence with one of guilt, and the burden is on the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *Reid*, 91 S.W.3d at 277. This standard of review applies whether the conviction was based on direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

Furthermore, questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to re-weigh the evidence nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.*; *Dorantes*, 331 S.W.3d at 379.

Felony murder is defined as the "killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." T.C.A. § 39-13-202(a)(2). Especially aggravated robbery is the "intentional or knowing theft of property from the person," that is "accomplished with a deadly weapon," and where the victim suffers "serious bodily injury." T.C.A. § 39-13-401(a) and -403(a).

Viewing the evidence in a light most favorable to the State, the proof shows that Mr. Perkins drove with his friends to the Walgreens parking lot, intending to sell a quarter pound of marijuana to Antoinette Reynolds. Ms. Reynolds came over to the car, told Mr. Perkins that her cousin was paralyzed, and walked with him back to a gold Ford Focus. Inside the Focus were Ms. Burns in the driver's seat and Appellant in the front passenger seat. Appellant is paralyzed. Mr. Perkins gave Appellant a plastic shopping bag of marijuana; no money was exchanged. Appellant told Mr. Perkins to get into the car and told Ms. Burns to drive off. Appellant then told Ms. Burns to stop the car and demanded that Mr. Perkins get out. When Mr. Perkins did not immediately comply, Appellant shot him in the chest. Mr. Perkins then fell out of the car and Ms. Burns drove away.

Appellant argues that there is no physical evidence, in the form of DNA or fingerprints, connecting him to the gold Ford Focus. However, "[p]hysical evidence is not a prerequisite to a conviction." *State v. Joseph William Wilson*, No. W2001-03007-CCA-R3-CD, 2003 WL 261939, at *6 (Tenn. Crim. App., at Jackson, May 27, 2003); *see also State v. Bonds*, 189 S.W.3d 249, 256 (Tenn. Crim. App. 2005) ("corroboration of a victim's testimony by physical evidence is not required for a jury conviction to be upheld on appeal"). The lack of physical evidence was brought to the jury's attention through cross-examination and closing arguments. The weight to be given to such evidence is a matter for the jury and will not be re-weighed on appeal.

Appellant claims that the testimony of his alibi witness, Ms. Mitchell, discredits the testimony of Ms. Burns, the only evidence linking Appellant to the crime. However, as previously noted, the credibility and weight given to a witness's testimony, including alibi witnesses, are issues resolved by the jury as the trier of fact. *See Bland*, 958 S.W.2d at 659; *Forbes v. State*, 559 S.W.2d 318, 324 (Tenn. 1977). The testimony of Ms. Burns is direct

evidence that Appellant took marijuana from Mr. Perkins without paying for it and then shot Mr. Perkins in the chest. The jury, as was their prerogative, chose to accredit the testimony of Ms. Burns over the testimony of Ms. Mitchell, and we will not second-guess the factual determinations of the jury. Accordingly, Appellant is not entitled to relief on this issue.

## II. Limitation of Cross-Examination of Ms. Burns

Appellant alleges that the trial court improperly limited defense counsel's cross-examination of Ms. Burns as to her affiliation with known gang members. "Generally speaking, a denial of the right to an effective cross-examination is 'constitutional error of the first magnitude and amounts to a violation of the basic right to a fair trial.'" *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995) (quoting *State v. Hill*, 598 S.W.2d 815, 819 (Tenn. Crim. App. 1980)). However, the propriety, scope, manner, and control of cross-examination rests within the discretion of the trial court and will not be disturbed on appeal unless there has been an unreasonable restriction on the right. *Id.*

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Relevance is determined by the issues presented for resolution in the trial, which, in turn, are determined by the elements of the offense charged and the defense asserted by the accused. *State v. Dubose*, 953 S.W.2d 649, 653 (Tenn. 1997). Evidence that is not relevant is not admissible. Tenn. R. Evid. 402. The standard of review for admissibility of evidence is abuse of discretion. *Dubose*, 953 S.W.2d at 652. A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003).

In a jury-out hearing, Ms. Burns testified that she was afraid of Appellant both because she had witnessed him shoot someone in her car and because he was in a gang. Defense counsel wanted to cross-examine Ms. Burns about her affiliation with other known gang members, including her current girlfriend, in order to discredit her fear of Appellant. After hearing the proposed testimony, the trial court ruled that the gang affiliation testimony was not admissible. The trial court instructed Ms. Burns to limit her testimony to her initial response that she was afraid of Appellant because she had just seen him shoot someone and not to "get into the gang stuff."

The trial court essentially ruled that the testimony was not relevant: "This isn't a trial on whether or not [Appellant is] a gang member and we'll spend half of [Ms. Burns'] testimony on that issue," rather than on substantive testimony about what she saw. Additionally, the trial court seemed concerned about impermissible character evidence,

stating that the proposed testimony "just muddies the water, in part for [Appellant]" by showing his "propensity to commit a crime for which he is on trial." *See* Tenn. R. Evid. 404(b). Without the testimony about Appellant's gang affiliations, cross-examination of Ms. Burns about her own affiliation with gang members would not be relevant since it is not an act of dishonesty and has no direct bearing on her credibility.

After reviewing the record, we do not find that the trial court abused its discretion in finding that "the gang stuff" was inadmissible. Nor did the trial court unreasonably restrict Appellant's right to cross-examine Ms. Burns, since defense counsel was permitted to question her stated fear of Appellant in other ways, such as pointing out the fact that she gave him her new phone number the day after the murder. Furthermore, even if there was error, we do not find that the limitation of the cross-examination of Ms. Burns on this one topic "more probably than not affected the judgment," in light of all the other evidence against Appellant. Tenn. R. App. P. 36(b). Therefore, Appellant is not entitled to relief on this issue.

*CONCLUSION*

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE